R. C. PERKINS, Adm'r, v. H. P. R. CALDWELL and others.

*Will—Legacy—Executor—Commissions.*

A testator, who in his life-time had made unequal advancements to his children, by his will bequeathed certain amounts to them, with a view to equality, payable in cash or property at the election of the executor, without stating when they should be paid ; the remainder of his estate was given to his wife for life and at her death the residue was to be divided into as many shares as he might have children then living ; at the time of his death the testator had sufficient personal property including slaves to pay his debts and legacies, but the solvent credits and monies belonging to the estate were exhausted in payment of debts and expenses, except certain shares of bank stock bequeathed to the executor (a child and legatee) but charged with the payment of $710 into the residuary fund ; the slaves at his death were worth much more than the amount of the legacies ; after his death the slaves and other personal property remained in the possession of the widow *with the approval of the legatees,* until the slaves were emancipated ; the executor (now deceased) offered to pay the legacy to one of the legatees, which was declined, and to another he paid a part ; no effort was made by the legatees to compel a payment of the legacies until after the slaves were emancipated ; *Held* ;

(1) That the legacies are not a charge upon the land of the testator ;

(2) That the estate of the executor is not liable for legacies ;

(3) That the estate of the executor is liable for $710, with interest from the death of the widow, to be paid into the residuary fund ;

(4) That the executor is entitled to commissions, it being found that
he acted in good faith.

(*Lassiter* v. *Wood,* 63 N. C. 360, cited and approved.)

CONSTRUCTION of a Will heard at Spring Term, 1878, of
BURKE Superior Court, before *Cloud, J.*

The principal question decided by this Court is whether
the legacies provided for in the will are a charge upon the
lands embraced in the residuary clause, and the facts mate-
rial to the same are embodied in the opinion. See same
case 77 N. C. 433. The testator bequeathed to T. R. Cald-
well his stock in the bank of Cape Fear, stating that as
said legatee had been advanced, he in consideration thereof
should pay $710 into the residuary fund. This was provided
for to produce equality among the legatees, and the pay-
ment of said sum was the condition upon which he should
take the bank stock.

His Honor held that the lands were charged with the
payment of the legacies and gave judgment accordingly,
from which the defendants appealed.

No counsel for plaintiff.
*Messrs. A. C. Avery,* and *G. N. Folk,* for defendants.

FAIRCLOTH, J. The plaintiff prays for a construction of
the will of John Caldwell and for direction in the adminis-
tration of the assets of the estate. When the case was be-
fore us heretofore we were compelled to remand it for the
ascertainment of important facts which have been found by
the referee and the Court, and we will now decide the main
questions presented with such general instructions as we
can give, and remand it to the Court below where the cal-
culations can be made and the details carried out. Without
attempting to use the language of the will, we will state
the substance of those facts material to the questions pre-
sented and such facts as are now before us.

The testator died in 1857, leaving him surviving his wife Hannah and four children, namely, James, Cornelia, Jane, and the late Tod R. Caldwell, who were his only legatees and devisees. The last named was his executor, who died in 1874 without any final settlement of the estate, and during the life of the widow. The testator left personal property amply sufficient including his slaves to pay his debts and all the legacies ; the solvent credits and money were however exhausted in payment of debts and necessary expenses, except certain shares of bank stock bequeathed to the executor. He had made several unequal advancements to his children, and with a view to equality directed his executor to pay specified amounts to his children, either in cash or in property at the election of the executor without saying when they should be paid. He then devised and bequeathed " all the residue of my (his) estate both real and personal to his wife during her life and directs that at her death the *residuum* or *balance* be divided into as many shares " as I (he) may have children then living."

The testator had advanced in his life time to his son James $6500, and this was made the basis of equality to be arrived at by giving such amounts to the other children as would, added to their advancements, equal that sum. James having died during the life time of his mother, and never having married, his interest in the residuary fund lapsed, and according to the express provision in the residuary clause, that fund at the termination of the life estate will be divided into three equal shares among the other children, so that the provision giving the interest of the said James in the event of his marriage and death without leaving children, to the heirs of his son Tod, is nugatory.

The principal question submitted is,—whether these legacies are a charge upon the lands embraced in the residuum? Of course any other property belonging to the estate is liable to these legacies except any property specifically be-

queathed, as for example, the shares of bank stock given to·
the executor. To determine this question it is proper to·
look at the condition of the testator's family and the na-
ture of his estate. *Lassiter* v. *Wood*, 63 N. C., 360. For
this case it is not necessary to consider whether a pecuniary
legacy becomes a charge on the realty by construction and
legal operation, or by express language, as the latter is not
the case here. The condition of the family sufficiently ap-·
pears from what has already been said, and the report
shows that at the time of the testator's death his solvent
credits and money were sufficient to pay all his debts and
that his slave property was worth more than three times
the amount of all the legacies chargeable thereon. It is
therefore not a violent inference that the testator did not
expect and intend these legacies to be satisfied from this
fund. But it further appears from the findings of His
Honor that the slaves remained undivided and unsold and
with the other personal property, stock and farming tools,
&c., remained as they were, in the possession of the widow
and on the plantation until the slaves were emancipated,
and that this was with the "approval of all the legatees."
It is further stated by the Court that " this disposition of
the property seems to have been a family arrangement ac-
quiesced in by all."

Again it is admitted by the legatee, Jane, that the execu-
tor offered to pay her legacy, and that she declined to take
it, and told him she did not want it during her mother's
life time. It is admitted that he paid Cornelia a part of
the amount due her, and it appears that he could not have
paid the balance without selling slaves, and she *now* says if
he had concluded to sell slaves for the purpose of paying
her, she does not know that she would have consented to
the sale.

We know these legatees could have compelled payment
of the amounts due them, but it does not appear that they

ever made any effort to do so at any time before emancipation. We therefore think these legacies are not a charge on the land. For these reasons we think the estate of Tod R. Caldwell is not liable for the legacies. We see no reason why it should be. That would be a hard measure resulting from subsequent events which neither party could *then* foresee. His failure to pay them certainly was no greater negligence than their failure to collect when they had a right to do so.

We think however his estate is liable to pay $710 into the residuum with interest from the death of the widow, that being the time pointed out for its division. The payment of this sum was the express condition upon which he was to receive the bank stock which he collected and used. This amount will be accounted for in the final settlement with his administrator.

It is stated by His Honor that the executor acted in good faith and with strict integrity, and as we see nothing to the contrary, we see no reason why commissions should be withheld from him. The fact that no inventory of the property which came to his hands can be found is not satisfactoy proof that it was not filed, because it also appears how it may have been destroyed. There is no exception to the amount allowed, but we will not say whether it is excessive or not, but leave that matter for the Court below to consider when the account is revised.

The judgment is therefore erroneous, and the case is remanded.

The cost in this Court will be paid equally by the parties. Error.                                    Reversed.