A. J. K. THOMAS, Adm'r of J. A. F. WATTS, v. J. B. CONNELLY et al.

*Clerk of Superior Court—Default— Official Bond—" Virtue" and " Color " of Office—Administration.*

1. Upon default by a Clerk of the Superior Court in respect to money received by him *"by color of his office,"* the sureties on his official bond become liable.

2. Money paid to, and received by him as Clerk, without legal authority, is *"by color of his office."*

3. Although an administrator has no authority to deposit with the Clerk, or right to require him to receive the proceeds of the sale of land to make assets, yet, if he does receive it, he does so *"by color of his office."*

4. Distinction between "virtue" and "color" drawn by MERRIMON, C. J.

This is a CIVIL ACTION, tried upon case agreed, at May Term, 1889, of IREDELL Superior Court, before *Brown, J.*

The plaintiff is the administrator of the estate of J. A. F. Watts, who died intestate in the county of Iredell in 1883. By his special proceeding, brought in the Superior Court of that county, against the heirs at law of his intestate, on the 8th day of February, 1887, he obtained license to sell certain of the real estate of his said intestate to make assets to pay debts of the latter, and costs, &c. Sale of the land was made, and the following is a copy of the order of the Court confirming such sale:

" This cause coming on for further direction, and it appearing that A. J. K. Thomas, administrator of J. A. F. Watts, on the 23d day of April, 1887, sold the land described in the complaint to William E. Morrison at the price of $13 per acre, one-fourth for cash and the remainder on a credit of six months, and he took bond, with surety, for the said remainder of the purchase money, and the sale-price appearing to be just and reasonable, and the security good, it is, therefore,

ordered and decreed that the said sale, in all things, be confirmed, and that the said A. J. K. Thomas proceed to collect said bond when it becomes due, and that he apply a sufficiency of the proceeds thereof to the payment of such debts and charges of administration as the personal estate and the proceeds arising from the sale of the other lands heretofore sold by him may have been insufficient to discharge, after first deducing the costs of this proceeding. If any surplus shall remain in the hands of the said A. J. K. Thomas, after the payment of the said debts and charges, the same to be considered as real estate, and is to be disposed of by the said Thomas, administrator as aforesaid, among such persons as would have been entitled to the land itself, according to law.

" It is further ordered by the Court, upon the payment of the purchase money, the said A. J. K. Thomas, administrator aforesaid, is to execute a deed to the purchaser for said land. And this cause is retained for further orders.

" This 14th day of May, 1887."

The defendant J. B. Connelly was duly qualified as Clerk of said Superior Court in December of 1886, and gave his official bond in renewal on the first Monday in December of 1887, with the other defendants in this action as sureties thereof. Afterwards, the plaintiff, having sold the land in pursuance of his license so to do, and having collected the purchase money thereof, deposited with the defendant Clerk of said Court a part of the money so collected, and the latter entered a receipt on a docket of the Court for a part of the same, whereof the following is a copy:

" May 7th, 1888.  Received of A. J. K. Thomas, administrator of J. A. F. Watts, two hundred and twenty dollars, in part of proceeds of sale of land of the estate of J. A. F. Watts.
" J. B. CONNELLY, *C. S. C.*"

And, for another part of the same, he gave the plaintiff a receipt, of which the following is a copy:

"Received of A. J. K. Thomas, administrator of J. A. F. Watts, $600, in payment of part of sale of land belonging to the estate of J. A. F. Watts, known as the Waugh place, sold to W. E. Morrison, and bid transferred to F. A. Watts.

"J. B. CONNELLY, *C. S. C.*"

The following is a part of the "case agreed" and submitted to the Court for its judgment thereupon:

"4. The plaintiff administrator aforesaid had not, up to the time of depositing the sums of money before mentioned, nor has he at any time since, made a final settlement of the estate of his intestate.

"5. That said J. B. Connelly, Clerk as aforesaid, on or about the 15th day of August, 1888, made default in his said office as Clerk aforesaid, and has failed to pay over said sums, and has fled the State and gone to parts unknown, after resigning his said office, and having, prior to such resignation, appropriated the aforesaid sums of money to his own use.

"Now, therefore, upon the foregoing facts, it is agreed between the parties hereto, that if the Court shall be of the opinion that the plaintiff is entitled to recover of the defendant Wallace and others, as sureties on said Clerk's bond, in this action, on the above agreed facts, judgment shall be rendered against the defendant J. B. Connelly and his sureties aforesaid, for the sum of eight hundred and twenty dollars ($820), with interest on the same from the 15th day of August, 1888, until paid, and costs of action.

"But if the Court should be of the opinion that the plaintiff is not entitled to recover of the sureties aforesaid on said Clerk's bond, upon the aforesaid agreed facts, then judgment shall be rendered for the defendants and their reasonable cost."

The Court gave judgment, whereof the following is a copy:

" The Court considers that if the money was paid to the Clerk under section 1543 of *The Code,* only the legatees, &c., therein referred to, or heirs at law, could receive it. It appears from the case as stated to have been deposited with the defendant Connelly by the plaintiff administrator before the intestate's debts were paid, and in contravention of the decree of sale and confirmation. The plaintiff was acting in his own wrong. It is admitted to have been '*deposited;*' and, the Court presumes, for the convenience of the administrator. The mere affixing the letters ' C. S. C.' will not make the bond liable. The Court is of opinion that '*this plaintiff*' cannot recover of the bond. It is adjudged that the plaintiff recover of J. B. Connelly eight hundred and twenty dollars ($820), with interest from August 15, 1888, and costs. It is adjudged that the other defendants go without day."

The plaintiff, having assigned error, appealed to this Court.

*Messrs. M. L. McCorkle* and *L. C. Caldwell,* for the plaintiff.
*Messrs. W. D. Turner & W. M. Robbins,* for the defendant.

MERRIMON, C. J.—after stating the facts: The question presented by the assignment of error in this case is, Are the defendants, sureties to the official bond of the defendant, late Clerk of the Superior Court, liable for the default of the latter in respect to the money received by him as such Clerk from the plaintiff? The answer to the question depends upon the proper interpretation of the purpose and condition of the Clerk's official bond, and, also, to what extent, if at all, such Clerk may become chargeable officially with moneys received by him by *color* of his office.

The statute, (*The Code,* § 72) prescribes that the Clerk of the Superior Court shall give a bond with sufficient sureties, " in a penalty of ten thousand dollars, payable to the State

of North Carolina, and with a condition to be void if he shall account for, and pay over, according to law, all moneys and effects which have come, or may come, into his hands, *by virtue or color of his office*, or under an order or decree of a Judge, even though such order or decree be void for want of jurisdiction or other irregularities, and shall diligently preserve and take care of all books, records, papers and property which have come, or may come, into his possession, by *virtue or color* of his office, and shall in all things faithfully perform the duties of his office as they are, or thenceforth shall be, prescribed by law." The purpose of this provision is very broad and comprehensive. It requires every Clerk of the Superior Courts to give bond with sufficient sureties to secure the faithful discharge of his official duties, and especially, among other things, to secure the accounting for and paying over according to law of all moneys and effects that may be or come into his hands "by virtue or color of his office." The condition of the bond required, and the liability of the sureties thereto, are co-extensive with the duties and obligations of the Clerk, as such, however these may arise.

Such Clerk is an important and responsible public officer, his duties are varied and serious, affecting the public and individuals. In a variety of ways moneys, rights, credits, securities and other things of value belonging to others go into his hands, and the law charges him with the same for such persons or for their benefit. The statute is careful to make the bond extend to and embrace within its scope and purpose, not only such "moneys and effects" as may come into his hands by "*virtue*" of his office, but as well, and as certainly, to such as may so come by "*color*" thereof, and, likewise, to such additional "*duties of his office*" as may be prescribed by law after the execution of the bond. There seems to be a studied purpose to make the bond embrace and to create liability of the sureties thereto on account of

all "moneys and effects" that come into the hands of the Clerk as such, whether they so come strictly according to law or not.

Such comprehensive liability of the sureties did not exist until the enactment of the Code of Civil Procedure; (C. C. P., § 137). It has been extended once or twice since then in some respects. Thus it appears that the enlargement of such liability was not made through inadvertence or misapprehension, but of purpose. There can be no doubt as to this, and the purpose must be allowed to have just effect.

Contrary to our first impression on the subject, the Clerk did not receive the money in question by *virtue* of his office. He had no legal authority to receive it. In contemplation of law—statutory provisions—it could not properly pass into the hands of the Clerk; certainly it could not, in the absence of some judicial order directing that it should. It was part of the proceeds of land sold at the instance of the plaintiff administrator to make assets to pay debts, &c., of *his* intestate: The judgment confirming the sale of such land directed the present plaintiff relator to use. so much of the proceeds of the sale thereof as might be necessary to pay the debts and charges of administration, &c.; that any surplus of the fund so arising should be deemed real estate, and that the plaintiff should dispose of the same, according to law, to such persons as would have been entitled to the land itself but for the sale. The judgment of confirmation of sale, &c., was a proper one, and it had the effect to vest the proceeds of the sale of the land in the present plaintiffs for the purpose therein specified, and only for such purpose. This is so, because the statute (*The Code*, § 1405) prescribes that "all proceeds from the sale of real estate (of the testator or the intestate, as the case may be), as hereinafter provided, which may not be necessary to pay debts and charges of administration, shall, notwithstanding, be considered real assets, and, as such, shall be paid by the executor, administrator or collector to such persons as

would have been entitled to the land had it not been sold."
So that, regularly and properly, the plaintiff was charged
with the money in question; he was not required, in any
case, to pay it or deposit it with the Clerk of the Court, nor
had he authority or right to require the Clerk to receive it.
There is no statutory regulation that so provides. The Court
below seems to have thought that the fund might be depos-
ited with the Clerk, not improperly, after the plaintiff had
completed the administration of the estate in his hands, as
allowed in the case provided for in the statute (*The Code*,
§ 1543). This is a misapprehension of the meaning of that
provision. It only applies to "any moneys belonging to the
*legatees or distributees* of the estate of his testator or intestate,"
&c. The fund in question did not belong to the legatees or
distributees, but to the heirs at law of the intestate, or to
such persons to whom they had disposed of their rights.

We are, however, of opinion that the money in question
came into the hands of the defendant, who was Clerk, as
Clerk, by "*color* of his office," and that, therefore, the defend-
ants' sureties are bound to the plaintiff for the same. The
Clerk, clearly, signed the receipts officially, and intended to
do so. The letters "C. S. C.," usually and appropriately
employed by such officers to indicate their official signatures
and official acts, appended to his signatures to the receipts—
his office—its nature and purposes—the recitals in the
receipts—the reference to the sale of the land—to the special
proceeding in which it was sold—the designation of the plain-
tiff as administrator of the intestate named—the nature of the
whole transaction—all these things go to show that the Clerk
received the money as Clerk, and that he and the plaintiff,
at the time, in good faith, believed that he had authority to
receive it as Clerk and hold it for proper purposes. It does
not appear, nor is it suggested, that there was the slightest
bad faith on the part of the Clerk or the plaintiff. Indeed,

in view of the nature of the fund, the Clerk might not, unreasonably, have thought he had the right, and that it was his duty to receive the money. Well-informed lawyers have insisted before us that he had such authority.

Thus, the Clerk received the money by " color of his office," in the sense of the statute, and the condition of the bond sued upon expressly embraces money so received by the principal in it. So receiving money implies that it is not received by virtue of his office, or according to law, in the case and in the way allowed and required by law, but otherwise. To receive money by "color of his office," in the sense of the statute, certainly embraces the case where the Clerk received it in good faith, and might reasonably believe he had the right and it was his duty to receive it for proper purposes. We need not decide now that it embraces other cases, because, as we have seen, the Clerk, in the case before us, received the money in question, believing, not unreasonably, that it was his official duty to receive it. That such is the true meaning of the statute is the more apparent from the provision therein, that the official bond of the Clerk shall embrace moneys received by him under an order or decree of the Court, although such order or decree shall be void for want of jurisdiction of the Court to grant the same, or for other irregularities. The purpose is to embrace within the scope of the bond all moneys received by the Clerk as such, in good faith, for a supposed lawful purpose, although it may turn out that it was improperly received and without legal sanction. *Broughton* v. *Haywood,* Phil., 380.

The plaintiff relator can maintain this action. He is entitled to have the money in controversy, to the end he may pay the remaining unpaid debts and charges, if any, of the estate wherewith he is charged, and any surplus to the heirs at law of his intestate, or such persons as may, through them, be entitled to the same.

There is error.   The judgment, as to the defendant's sure-
ties, must be reversed, and judgment entered in favor of the
plaintiffs in accordance with the stipulation in the case
agreed and submitted to the Court for its judgment.

Error.