The defendant, James D. Boone, was continuously clerk of the Superior Court of the county of Northampton from December, 1879, until 8 December, 1884, and his codefendants are sureties to his official bonds, alleged breaches of which are the subject of this action.
At Spring Term, of 1880, of the Superior Court of that county, the court, on motion of the solicitor of the State, made an order relieving a former "receiver" (presently to be mentioned) and appointing the said clerk "receiver" . . . to manage the funds of said minor children and lunatics (numerous persons mentioned), including the relator (who was at that time an infant), for their benefit, and make his annual report," etc.
Afterwards, on 4 December, 1882, the said clerk, as such receiver, received from James W. Grant, administrator de bonis non of Samuel Presson, $770.59, which sum was due the relator (then an infant) as her share of her father's personal estate, and executed to him a receipt, whereof the following is a copy:
"770.59. Received of James W. Grant, as administrator de (80)bonis non of Samuel Presson, the sum of seven hundred and seventy dollars and fifty-nine cents, in full payment of Mary E. Presson's share of said Samuel Presson, which said sum was coming to her as distributee of said Samuel Presson. This 4 September, 1882.
(Seal.) JAMES D. BOONE,
Clerk of the Superior Court of Northampton County and Receiver of Mary E.Presson."
The said Mary E. Presson, after she attained the age of twenty-one years, on 18 March, 1885, demanded of the said Boone that he pay her the said sum of money, with interest thereon, and he refused and failed to pay or account to her for the same. Where upon, she brought this action to recover the said sum. She alleges, among other things, that the said Boone misapplied, converted to his own use, and *Page 58 
refused to account to her for the same, etc., etc. The defendants denied most of the material allegations of the complaint, and the pleadings raised issues of fact.
The following is so much of the case settled on appeal as need be reported:
"The plaintiff offered in evidence the record of the appointment of J. D. Boone as receiver of Mary E. Presson, the relator, at Spring Term, 1880, of said court. The defendants objected to this evidence, for that the record did not show that the court had jurisdiction of the person of Mary E. Presson or of her property; that this was not all of the record, in that the appointment of N. R. Odom, a former receiver, should be first introduced, which defendants contended was invalid, and that hence the appointment of Boone was invalid. This record of appointment of N. R. Odom was subsequently introduced by the defendants. Objection overruled, and exception by the defendants.
"The plaintiff then offered in evidence the receipt of Boone, (81) dated 4 September, 1882, and then closed his case."
With a view of showing that N. R. Odom (the former clerk and receiver) was never legally appointed receiver of Mary E. Presson's estate, the defendants introduced the record of said appointment, as follows:
"NORTH CAROLINA — Superior Court, Spring Term, 1877.
"It is ordered by the court that N. R. Odom be and hereby is appointed receiver for Mary E. Presson and Martha A. Presson, minor children of Samuel Presson, deceased, and that N. R. Odom is hereby authorized and empowered to collect and receive from James W. Grant, public administrator, who is administrator de bonis non of the said Samuel Presson, all sums of money that may be or came into his hands, belonging to said infants, and expend the income, if necessary, for their maintenance and support."
W. W. Peebles, a witness for the defendant, then testified that he and the former clerk of said court, the said J. D. Boone, made a thorough search of the records in said office for said county, and that no report or presentment by the grand jury that Mary E. Presson was a minor, having an estate, and was without guardian, could be found, and that no entry or memorandum of such report or presentment could be found; that the record introduced contained all that could be found in said office touching the appointment of said Odom as receiver of Mary E. Presson.
The defendants insisted, that when the court appointed Odom receiver of Mary E. Presson's estate it had jurisdiction neither of the person of *Page 59 
Mary E. Presson nor of her estate, and that the appointment was a nullity; and that the appointment of James D. Boone as receiver in his stead was also null and void, and asked the court so to charge.
The judge instructed the jury that, if the evidence is (82) believed, the defendant Boone received the money alleged in the complaint by virtue and color of his office as clerk of the Superior Court, and that the jury would answer the first issue "Yes." The defendants excepted to this charge.
The judge further charged the jury to allow the plaintiff six per cent interest from the time the defendant J. D. Boone received the fund until the time a demand was made on him, which was at the time of the service of the summons on the defendant Boone, and twelve per cent thereafter. The defendants excepted to this charge on the ground that the fund did not bear interest until a demand was made.
The following issues were submitted to the jury —
1. Did the defendant J. D. Boone receive the money mentioned in the complaint by virtue or color of his office as clerk of the Superior Court of Northampton County? To which the jury answered, "Yes."
2. What amount is due the relator? To which the jury answered, "$700."
There was a judgment upon the verdict, and appeal by defendants.
The defendants filed the following exceptions —
1. The judge erred in admitting the record of the appointment of J. D. Boone as receiver of Mary E. Presson.
2. In instructions to the jury.
3. In refusing to give the instructions asked by the defendants.
The defendant Boone was clerk at and before the Spring Term, 1880, of the Superior Court mentioned above. At that term he was appointed, as clerk, receiver of the funds belonging to the relator, then an infant. Afterwards, (83) on 4 December, 1882, he received of funds due to her, $770.59, which, it is alleged, he misapplied to his own use and purposes. He purported to be appointed such receiver under and in pursuance of the statute (Bat. Rev., ch. 53, secs. 22, 47). The liability of such clerk as receiver arising under these statutory provisions was not, at the time just mentioned, embraced by his official bonds, because, as has been decided, his office and duties as such clerk did not embrace the receivership and the duties and liabilities incident thereto. The receivership and its incidents were outside of and beyond his official duties as clerk, and hence *Page 60 
not embraced by his official bond and its purposes. Bat. Rev., ch. 17, sec. 137; Kerr v. Brandon, 84 N.C. 128; Rogers v. Odom, 86 N.C. 432; Syme v.Bunting, 91 N.C. 52.
The scope and purpose of the official bonds of clerks of the Superior Courts were after wards enlarged by the statute (The Code, sec. 72), which provided, among other things, that the bond required should be void, "If he (the clerk) shall account for and pay over, according to law, all moneys and effects which have come or may come into his hands by virtue or color of his office, or under an order or decree of a Judge,even though such order or decree be void for want of jurisdiction or otherirregularities," etc. This statutory provision greatly enlarged the compass of the clerk's bond, and, as enlarged, it embraces receiverships and the incidental liabilities growing out of them. Syme v. Bunting, supra. But the receivership and the liability growing out of it in this case was created and arose before the statutory provision just cited, and it operated only prospectively; it did not apply to and embrace such liabilities existing at the time it was enacted. Syme v. Bunting, supra; Thomas v.Connelly, 104 N.C. 342. The bond of the clerk current at the time of the enactment would, however, embrace such liabilities of the (84) clerk arising thereafter, because it was contemplated, at the time the bond in such case was given, that new and additional duties and obligations might be added to those of the clerk existing at that time. The statute so expressly provided. Bat. Rev., ch. 17, sec. 137; Wilmingtonv. Nutt, 78 N.C. 177; S. c., 80 N.C. 265.
It appears that the defendant clerk and receiver received the fund in question in December of 1882. The statute enlarging the scope of clerk's bond above cited took effect on the first day of November, 1883. The Code, sec. 3866. The bond sued upon does not, therefore, embrace the liability of the defendant clerk as receiver. Syme v. Bunting, supra. It might possibly be otherwise if it appeared that the clerk, as receiver, had the fund at and after the time the enlarging statute took effect. It does not appear that he so had the same.
It is made a ground of defense in the answer of the defendants, that the appointment of the defendant clerk as receiver of the relator was void, because, as alleged, there was no action pending in which such appointment might be made, nor was there any presentment of a grand jury that authorized such appointment as contemplated and intended by the statute (Bat. Rev., ch. 53, secs. 21, 22, 46, 47) then in force. The appointment seems to have been, at least, irregular. So far as appears, it was made upon the mere suggestion and motion of the solicitor for the State. But we need not decide that such appointment was or was not void, because we are of opinion that the relator is entitled to recover whether the defendant clerk was or was not such receiver. *Page 61 
The statute (The Code, secs. 1543, 1544; Laws 1881, ch. 305, secs. 1, 3) prescribes that "It shall be competent for any executor, administrator or collector, at any time after twelve months from the date of letters testamentary or of administration, to pay into the office of clerk of the Superior Court of the county where such letters were granted, any moneys belonging to the legatees or distributees of the estate of (85) his testator or intestate, and such payment shall have the effect to discharge such executor, administrator or collector, and his sureties on his official bond, to the extent of the amount so paid.
"It shall be the duty of the clerk, in the cases provided for in the preceding section, to receive such money from any executor, administrator or collector, and to execute a receipt for the same under the seal of his office."
Now, when a clerk receives money as contemplated by this statutory provision, he clearly receives it by virtue of his office. It is made his duty, and he is required to receive money in the cases provided for, and in the nature of the matter he is charged and chargeable with it as clerk when and as soon as he receives it. He is required to keep the same safely until he shall pay it to the persons entitled to have the same. His bond is intended to secure "all moneys and effects which have come or may come into his hands by virtue or color of his office," etc. Thomas v. Connelly,supra; Cassidey ex parte, 95 N.C. 225; Sharpe v. Connelly, 105 N.C. 87.
It appears here, by and from the complaint, among other material facts alleged, that an administrator de bonis non, after the lapse of more than twelve months next after the date of his letters of administration, paid the sum of money mentioned for the relator, a distributee of the intestate, to the clerk of the Superior Court of the county where such letters were granted; that the clerk gave his receipt for the same, signing it as "Clerk of the Superior Court of Northampton County, and receiver of Mary E. Presson," the relator, and under the seal of his office. The clerk thus received money that he might receive and be charged with in a case in the way provided for by the statute. He seems to have had the statute in view, and to have intended to comply with its requirements. He gave his receipt as clerk "under the seal of his office" — that is, the seal of court — kept and used by him. He had no other seal of office required or recognized by law. Hence, the seal of the (86) court is meant. Although the clerk may have been receiver, still he might receive such fund into his office as clerk. The statute required that he should receive it as clerk, to be paid out to whomsoever might be entitled to have it. It was in his hands — in his office — for all lawful purposes. He received it, as he might do, as clerk as well as receiver. He purported to receive it by virtue of his office in the case provided for *Page 62 
by law. Else, wherefore did he give and sign the receipt as clerk under his seal of office? There is no reason why he might not receive the fund into his office as clerk, although the court might, in some appropriate pertinent way, require him to deal with the fund as receiver, if he were such receiver. He might be chargeable with the fund in the double capacity of clerk and receiver. In a proper case, the court might have jurisdiction to require him, in such double capacity, to account for and dispose of the fund according to law. The mere fact that the clerk was receiver did not prevent him from receiving the fund that he was required by law to receive as clerk.
As the defendant might thus receive the fund and did so, as appears from the pleadings, and his receipt not being denied, the law charged him with it as clerk by virtue of his office, and when he made default in failing to pay the same to the relator, who was entitled to have it, as he was bound to do, she at once became entitled to have her remedy for such default against his sureties to his appropriate official bond for a breach of the condition thereof.
Nor is there any just reason why the relator may not have her remedy in this action, because the allegations of the complaint fully develop informally her cause of action against the defendant as clerk as well as receiver, and it appears from material facts admitted in the answer, and the verdict of the jury upon the pertinent issues of fact (87) submitted to them, that the relator is entitled to have the judgment appealed from. When the cause of action appears sufficiently from the complaint, though informally alleged, and the case is tried upon its merits, the court ought to enter such judgment, as the pleadings, the admissions of fact, the findings of fact in some cases by the court or a referee, or the verdict of a jury upon issues submitted to them, warrant, without regard to an imperfect or improper demand for judgment in the complaint or other pleadings, or whether there be any formal demand therefor. The merits of the matter litigated and settled appearing, the law at once suggests the proper judgment to be given. While it is far better and very desirable that the pleadings shall be directly pertinent, precise and orderly, still when they can be upheld as sufficient, this must be done, if to do so works no injustice to a party. This is the spirit and purpose of the present method of civil procedure. Dempsey v. Rhodes,93 N.C. 120; Moore v. Nowell, 94 N.C. 265; Harrisv. Sneeden, 104 N.C. 369.
The exception to the instruction the court gave the jury as to interest is unfounded. As the defendant clerk failed to pay the relator the money he had so received when she demanded that he pay her the same, the presumption is that he used it as soon as he received it. He might show the contrary. If he used it, he was properly chargeable with *Page 63 
interest at the rate of six per centum per annum, and twelve per centum, certainly, from the time of the demand. The Code, sec. 1890; S. v. Allen,27 N.C. 36. The judgment is
Affirmed.
Cited: Smith v. Patton, 131 N.C. 397.
(88)