E. C. WATERS et al. *v.* ANN B. MELSON, Administratrix of
J. A. Melson, et als.

*Clerk of Superior Court—Receiver—Liability of Sureties.*

1. Where in an order of Court appointing "J. A. M., Clerk of the Superior
   Court," receiver of infants' estate, the word "as" was omitted
   before the words "Clerk of the Superior Court": *Held,* that the
   intention of the Court to appoint M. as receiver in his official
   capacity was sufficiently indicated.
2. Under the Act of 1868, ch. 201 (Battle's Revisal, ch. 53, section 22),
   the Court has authority to appoint a Clerk of the Superior Court
   receiver of infants' estate, etc., and the sureties on his official
   bond are liable for any breach of his duties as such receiver.
3. The burden is upon a receiver and his sureties to show that he used
   due diligence in investing the money in his hands.

CIVIL ACTION, tried before *Hoke, J.,* and a jury, at Fall
Term, 1892, of WASHINGTON Superior Court.

The action was brought against the defendants as administratrix and sureties on the official bond of James A.
Melson, Clerk of the Superior Court, to recover $662.80,
with interest from the 17th day of February, 1873, which
went into the hands of the said J. A. Melson under the
order of Court at Spring Term, 1873, appointing him
receiver of the estate of the minor children of A. T. Waters,
deceased. The appointment was made on the petition of
J. J. Martin, Solicitor (on presentment of grand jury), in
behalf of the said minor children, who were without guardian, and was as follows:

"It appearing to the Court that Ernest C. and W. J.
Waters are minor heirs of A. T. Waters, residing in Washington County, and are without guardian, it is ordered that
James A. Melson, Clerk of the Superior Court of Washington County, be appointed receiver to and for the same Ernest

C. and W. J. Waters, with power and authority to pay into his possession all of the property and estate of the said Ernest C. and W. J. Waters, and report to the next term of this Court, and invest the same, in the meantime, subject to the order of this Court."

The complaint alleged also that the said Melson failed to invest the money as required by order of the Court, and failed to pay over the same to plaintiffs, etc.

It was admitted by the defendants that the matters and things set forth in the complaint were true, except that Melson was appointed receiver in his capacity of Clerk, or that he received the money shortly after his appointment, or that he could have by proper diligence invested it, and it was agreed that issues as to the date of the receipt of the money and as to Melson's ability to have invested it, should be submitted to a jury, and that all other issues of law or fact, should such arise, should be passed upon by the Judge.

The relators introduced testimony tending to show that James A. Melson, the intestate of the defendant Ann B. Melson, received from an insurance company about the 15th of April, 1873, for the use of the relators, the sum of $662.80, and that said money was burnt or stolen when the court-house was burnt on the 15th of May, of the same year.

The defendants introduced no testimony.

His Honor instructed the jury that if Melson had the money on hand as long as a month, or near that, and was under direction to invest it, and failed to do so before it was burnt or stolen, this would put on the defendants the burden of showing that he had made every proper effort to lend the money and failed. That the duty was placed upon the said Melson to make diligent effort to lend the money, to use that diligence that a prudent, careful business man would in the management of his funds, and if

he failed to make such effort the second issue should be answered, Yes; but that if he used this diligence, and after proper effort failed to obtain proper security, or to make a safe, desirable loan, the answer to the second issue should be, No.

The defendants contended, and asked the Court so to charge, that under the petition of Martin, Solicitor, and said order of the Superior Court, the bond in suit was not liable for the money claimed, as above stated, because when the petition was filed and order was made, the Court had no authority by law then in force to appoint the Clerk receiver in his official capacity; and (2) if it did, the order appointing said Melson receiver did not so appoint him in his aforesaid capacity "as Clerk," but imposed merely an individual liability upon him, and that the relators in this case cannot recover in this action.

The Court held otherwise, and defendants excepted. There was no further request made for instructions by defendants, and no other exceptions taken to charge when made. The defendants, however, in the case on appeal, and within time allowed by law, excepted to charge of Court, and assigned for error therein that the Court charged the jury—

1. If the Clerk had the money on hand as long as a month, or near that, and was under direction to invest the same and failed to do so before it was burnt or stolen, this would put on him and defendants the burden of showing that he had made every proper effort to lend the money and failed.

2. The duty was placed on the Clerk to make diligent effort to lend the money, to use that diligence that a prudent, careful business man would exert in the management of his own funds, and if he failed to make such effort the second issue should be answered, Yes.

3. If, however, he used due diligence, and, after proper effort made, failed to obtain proper security, or to make a safe, desirable loan, the answer to second issue should be, No.

The issues submitted and the responses were as follows:

1. At what time did the Clerk receive the money under order of the Court? Answer. About the 15th of April.

1. Did the Clerk fail and refuse to invest the money pursuant to the order of the Court? Ans. Yes.

Judgment for plaintiffs, and appeal by defendants.

*Mr. L. C. Latham,* for plaintiffs.

*Messrs. C. L. Pettigrew* and *A. O. Gaylord,* for defendants (appellants).

SHEPHERD, C. J.: At the Spring Term, 1873, of the Superior Court of Washington County, the relators were presented by the Grand Jury as infants without guardian, and, upon the petition of the Solicitor, the defendant Melson, the Clerk of the said Court, was appointed receiver of their estates. The question presented is whether the sureties on the official bond of the said Clerk are responsible for his default as such receiver. The language of the order of the Court is, "That James A. Melson, Clerk of the Superior Court of Washington County, be appointed receiver," etc., and it is insisted by counsel that the omission of the word "as" before the words "Clerk of the Superior Court" is fatal, and that a proper construction of the order is that the said Melson was appointed in his individual capacity only. The case of *Kerr* v. *Brandon,* 84 N. C., 128, cited by the defendants, is no authority for this contention, as the order in that case made no reference whatever to the official position of Brandon as Clerk. We are very clearly of the opinion that the terms of the order sufficiently indi-

cate the intention of the Court to appoint the said Melson as receiver · in his official capacity, and the only serious question therefore to be considered is whether the Court had authority to appoint him as such and thereby impose a liability upon the sureties to his official bond.

The Act of 1868, ch. 201, which is applicable to this case, was brought forward and is to be found in chapter 53 of Battle's Revisal. In section 22 of the said chapter it is provided that the Court, at the instance of the Solicitor, may commit the estate of an infant having no guardian, or whose guardian has defaulted, "to some discreet person." In the Revised Code, ch. 54, section 15, the words employed in a similar provision are "The Clerk · and Master or other discreet person"; and it is · urged that by thus changing the phraseology the Legislature manifested its intention that such appointments should no longer be conferred upon the officers of the Court, and that their sureties cannot therefore be held responsible. This very point was pressed with much ingenuity, in the case of *Rogers* v. *Odom*, 86 N. C., 432, but the Court (RUFFIN, J.), in order "to avoid any misunderstanding in the future," distinctly declared that it could not be sustained. The Court said: "In this view of counsel we cannot concur, but rather think that the discrepancy between the two statutes resulted from the fact that about that time the office of Clerk and Master was abolished, and hence all mention of it was omitted. The Court cannot but take notice of the fact that since the new statute the Court has been in the habit of bestowing such appointments upon their Clerks, oftentimes against their will, and under the conviction that their bonds afforded protection for the funds and effects committed to them, and that according to the understanding of all parties, both before and after the acceptance of the office of Clerk, the Courts had a right to do as they have done; hence we con-

clude that in such cases the sureties are accountable, the office being taken *cum onere.*"

It is urged, however, that the decision in the above case is in conflict with the language we have quoted, but it is difficult to believe that a Judge so distinguished for clearness of reasoning, as well as profound learning, should in the same opinion have committed such an error. There is really no such conflict as is supposed, and this is apparent from the fact that Odom, the defendant, was not appointed by virtue of the statutory provision (sections 21, 22, 46, 47, ch. 53, Bat. Rev.) which the learned Justice was discussing. These provisions relate to the appointment of a receiver at the instance of the Solicitor where a guardian has been removed (section 21), or, as in the case before us, where the Grand Jury have presented an infant without guardian (section 47).

In the case referred to, Odom was appointed by the Judge at term upon the simple petition of the infants by their next friend for the purpose of suing for and collecting insurance money from a foreign corporation which was beyond the jurisdiction of the Court. Such a proceeding, if not irregular, was certainly novel, and it is plain that there could have been no presumption that the sureties knew that such appointments had been or would be made, and that they contracted with reference to such a liability. The appointment of Odom was assimilated by the Court to the appointment of a receiver in ordinary actions, as the receivership of a railroad and the like, and it was because there had been no "habit of bestowing such appointments" upon the Clerks in such cases that the Court held that the bond of the said Odom was not responsible. In the language of the Court, such an appointment "could never have been within the contemplation of the sureties when contracting for the fidelity of their principal in his capacity as Clerk."

We are, therefore, of the opinion that there is nothing in the decision in *Rogers* v. *Odom, supra,* which conflicts with the deliberate and emphatic declaration of the Court that in cases like the present the Court has authority to appoint and that the sureties are liable. Neither is there anything in *Kerr* v. *Brandon, supra,* which militates against this view. Indeed, we are almost induced to infer from the absolute silence of the Court upon the subject, as well as the general tendency of the opinion, that had the Clerk been appointed receiver in his official capacity, the Court would have reached a similar conclusion. The decision seems to have been based upon the form of the order and not upon the absence of authority in the Court (as indicated in the head note) to impose the duty upon the Clerk in his official capacity.

In consideration of the views we have indicated, there was no error in the refusal of the Court to instruct the jury as requested by the defendants. Neither do we see any error of which the defendants can complain in the charge of the Court; for, conceding that the Court should not have given the general instruction as to what a prudent man would have done under the circumstances (*Emry* v. *Railroad,* 109 N. C., 589), the defendants could not have been prejudiced, as the Court properly ruled that the burden was upon them to show that they had used due diligence in investing the money, and upon this point there was no testimony. The judgment must be

Affirmed.