W. J. HANNAH, TRUSTEE, ETC. v. R. A. L. HYATT ET ALS.

(Filed 12 January, 1916.)

**1. Clerks of Court—Receivers—Official Bonds—Sureties' Liability.**

Where lands are ordered to be sold and the court appoints the clerk of the court by name and official capacity as such to sell and to receive and invest the proceeds, without requiring bond, the clerk acts officially in regard to such duties, and the sureties on his bond as clerk of the court are liable for his failure to properly discharge the duties of his trust.

**2. Clerks of the Court—Receivers—Orders of Court—Disbursements—Credits.**

Where the clerk of the Superior Court is ordered in his capacity as such to sell lands and invest and reinvest the proceeds, and makes payment of certain moneys under the further orders of the court, in pursuance of the management of the property, no personal liability attaches to the clerk in acting accordingly; and where it is established that such orders have been duly made, the failure to record them cannot prejudice him.

**3. Appeal and Error—Reference—Exceptions.**

Where a referee's conclusion of law upon the facts found by him has been overruled by the trial judge, and no exception thereto has been taken by the appellant, he may not be heard to complain on appeal.

**4. Clerks of Court—Receivers—Orders of Court—Deposits—Interest.**

Where the clerk, under order of court, sells certain lands, and deposits the proceeds with a bank which paid 5 per cent on accounts deposited for six months, but no interest on checking accounts, and it appears that the clerk was required to check on this account under the further orders of the court, but made a special arrangement with the bank whereby he was to receive 4 per cent on this deposit, which was the best he could do, he is not chargeable with the 5 per cent interest paid by the bank on its time deposits.

**5. Same—Two Funds.**

Where an officer of the court, ordered to sell land, deposit the proceeds in a bank at the largest rate of interest obtainable, has two funds so deposited, on one of which he can and on the other he cannot draw interest, and he is required to check on his account in the performance of his duties, which could have been done on either account, he is chargeable with the interest lost by his checking on the interest-bearing account.

**6. Public Officers—Detaining Funds—Penalties—Interpretation of Statutes.**

In an action to recover the 12 per cent allowed under Revisal, sec. 284, from the clerk of the court, etc., for money unlawfully detained, it is necessary that the plaintiff show some adequate default; and it appearing in this case that the parties agreed to a settlement, but that the plaintiff had refused to make a proper allowance for certain expenditures, the cause is sent back for further findings as to what had been done by the parties at the attempted settlement, the amount, if any, in defendant's hands and due the plaintiff, or whether a proper tender had been made and refused.

HANNAH v. HYATT.

**7. Clerks of Court—Receivers—Commissions—Appeal and Error—Remanding Case.**

The clerk of the court being required to sell certain lands and invest the proceeds, etc., and it appearing that he had rendered services of value, with no indication of conversion, misapplication, or commingling of funds, it is held that he is entitled to his commissions in the settlement of the estate, though he is chargeable with certain interest that he may have received on the funds intrusted to him. Revisal, sec. 2773, relating to the commissions of the clerk, has no application to the facts of this case.

CIVIL ACTION heard by *Cline, J.*, upon exceptions to a referee's report, at May Term, 1915, of HAYWOOD. Defendants appealed.

The defendant R. A. L. Hyatt was elected clerk of the Superior Court of Haywood County in November, 1906, and in the next month he duly qualified as such by giving his official bond, with W. T. Lee, R. Osborne, Allen Howell, Jr., and S. C. Welch, defendants, as sureties. S. C. Welch died on 18 December, 1912, and the other defendants, I. H. Way and J. C. Welch, are his executors. R. A. L. Hyatt continued in office, with the same bond and sureties, until 21 June, 1909, when he resigned, and R. E. Osborne was appointed his successor and was duly qualified, and J. R. Leatherwood became his successor by election of the people in 1910 and duly qualified.

At July Term, 1907, the court, in regular proceedings, ordered that part of the "Love Speculation Land" known as "Cold Mountain tract" to be sold, and further ordered that "R. A. L. Hyatt, clerk of Haywood County Superior Court, be and he is hereby appointed a commissioner of the court to make the sale," but there was no direction that he give a bond. The appointee was directed to pay to Hugh A. Love the sum of $1,034.83 from the proceeds and deposit the balance ($3,224.01) in the Bank of Waynesville and "take for the same a certificate of deposit, payable to said Hyatt, commissioner of the court, obtaining the best rate of interest for the same that can be obtained." This tract of land was conveyed by Hyatt, at the request of the purchaser, Hugh A. Love, by deed to J. F. Abel, for the consideration mentioned therein. The deed was drawn and executed in the name of "R. A. L. Hyatt, clerk of the Superior Court of Haywood County and commissioner of the court," and the mortgage from Abel to secure the notes for deferred payments described him as "R. A. L. Hyatt, commissioner of the court."

At February Term, 1908, the court ordered a sale of another portion of said lands, known as the "Martin Tract," and appointed R. A. L. Hyatt to make the sale, in the following language: "It is considered, ordered, adjudged, and decreed by the court that R. A. L. Hyatt be and he is hereby constituted and appointed a commissioner of the court to make sale," etc., and the order required him to give bond in the sum of $1,500, conditioned to pay the proceeds of sale ($1,020) to such party

or parties as he, the said R. A. L. Hyatt, may be directed, under and by orders of the court; and it was further directed that "the said sum be deposited in the bank and removed therefrom only by order of the court." That the bond for $1,500 was given and the land sold by Hyatt on 5 March, 1908, and a deed executed to James A. Martin, the purchaser, for the consideration of $1,020, the amount of his bid. This deed described Hyatt as follows: "R. A. L. Hyatt, commissioner of the court under a judgment of the Superior Court of Haywood County."

On 16 July, 1907, he deposited the amount paid to him by J. F. Abel ($4,258.83) in the Bank of Waynesville on open account, subject to check, in the name of "R. A. L. Hyatt, commissioner," and by special contract with the bank the deposit drew 4 per cent interest, and on 5 March, 1908, he deposited the amount received by him from James A. Martin in the Commercial Bank, on open account, subject to check, and without interest, the deposit having been made in the name of "R. A. L. Hyatt, commissioner." He collected interest to the amount of $123.57 from the Bank of Waynesville on the deposit in that bank. He checked out of the bank deposits divers sums under orders of the court, and among others he was directed to pay to one W. W. Stringfield $50 each month for services to be rendered "as agent for the Love estate," and gave checks to Stringfield for the said amount each month from 1 August, 1907, to 1 July, 1908; it being $550 in all.

At July Term, 1908, the presiding judge signed an order, in chambers, directing R. A. L. Hyatt to pay, until further ordered, from the funds of the Love estate to W. W. Stringfield the sum of $50 each and every month thereafter, for services rendered to said estate. This order was not entered on the minutes of the court nor was there any entry referring thereto, and the order has been lost. There has been no action of the court revoking said order. That, pursuant to said order, and acting in good faith thereunder, R. A. L. Hyatt paid to W. W. Stringfield by checks on the bank $50 each month from 4 August, 1908, to and including 1 June, 1909, making $550 in all, and on and after 29 July, 1911, he paid to W. J. Hannah, trustee, and administrator of the Love estate, and plaintiff in this case, the $1,020 received by him from the sale of the Martin lands, and $980 received from the sale of the "Cold Mountain tract."

On 16 March, 1911, plaintiff demanded of R. A. L. Hyatt all funds in his possession, or which should be in his possession, belonging to the Love estate, and Hyatt failed to comply with the demand.

The case was referred to Mr. J. S. Bohannon to take evidence and state an account, with his conclusions of law, and he reported the same to the court. The material part of his findings are substantially stated above. As a conclusion of law he held that the defendant acted under the orders of the court in respect to the sale of the "Cold Mountain

tract" and the proceeds of the sale thereof, not simply as commissioner, but as clerk of the Superior Court, and that the sureties on his bond are liable for any default by him; but as to the Martin land, he was acting solely in the capacity of commissioner, and his sureties were not liable for any default by him in respect thereto; and the court, in passing upon the exceptions, affirmed these rulings. The referee concluded that the defendant R. A. L. Hyatt and his codefendants, his sureties, were indebted to the plaintiff W. J. Hannah, as trustee and administrator of the Love estate, in the sum of $1,553.16, with interest at the rate of 12 per cent on $1,110.72 from said date until paid, which principal sum included the last payments to W. W. Stringfield, under order of July Term, 1908, amounting in all to $550, and interest thereon. This ruling the court modified by striking from the conclusion of the referee the said amount of $550 and incidental items, and reduced the amount due to the sum of $682.46, with interest on $488.05 from 18 January, 1915, until paid, and adjudged that the costs of the suit be paid by the defendants. The referee charged defendants with 5 per cent interest to 16 March, 1911, on the clear deposit in the Bank of Waynesville, being $3,225.01, that is, $4,258.83, less $1,034.82, amount paid by Hyatt to Hugh A. Love, and 12 per cent interest on the same from 16 March, 1911, until it is paid; and this ruling was sustained by the judge, subject to a proper deduction of the Stringfield payments. The referee charged no interest on the $1,020 derived from a sale of the "Martin Tract," and this was approved by the judge.

Defendants duly excepted, and from the judgment appealed.

During the years 1907, 1908, and 1909, the Bank of Waynesville paid 5 per cent interest annually on all money deposited with it "on time certificates or certificates of deposit, and paid to R. A. L. Hyatt 4 per cent on his deposit of $4,258.83, and from 5 March, 1908, to 1 January, 1911, the Commercial Bank of Waynesville paid 5 per cent interest per annum on all money left with it" on time deposit or certificate of deposit, and which was allowed to remain in the bank for six months. That R. A. L. Hyatt attempted to deposit the fund of $1,020 received from the Martin land with both banks at 4 per cent, but they refused to receive it and pay interest on it if it was subject to check as in the case of the $4,258.83 deposited with the Bank of Waynesville.

*John M. Queen and W. J. Hannah for plaintiff.*
*M. Silver and J. W. Ferguson for defendant.*

WALKER, J., after stating the case: There are five questions presented by the defendants' exceptions to the report of the referee and to the rulings of the judge thereon.

First. The referee held that the money derived from the sale of that part of the "Love Speculation Land" which is known in the case as the

"Cold Mountain tract," it being $4,258.83, was received by the defendant R. A. L. Hyatt by virtue and under color of his office, and therefore his sureties were liable with him for any default in respect to that fund. The judge confirmed this ruling of the referee, and we concur therein. The clerk was appointed, in his official capacity, to make the sale and receive, invest, and disburse the proceeds of the sale made by him, and this Court has often adjudged that in such a case, as he acts officially, he is necessarily liable in the same way for any failure to properly discharge the duties of his trust. *The Judges v. Deans,* 9 N. C., 93; *State ex rel. Saunders v. Gaines,* 30 N. C., 168; *Broughton v. Haywood,* 61 N. C., 380; *Cox v. Blair,* 76 N. C., 78; *McNeill v. Morrison,* 63 N. C., 508; *Boothe v. Upchurch,* 110 N. C., 62; *Kerr v. Brandon,* 84 N. C., 128; *Waters v. Melson,* 112 N. C., 89.

In *Kerr v. Brandon, supra,* the Court held that the appointment of the incumbent of the clerk's office as receiver of an infant's estate did not impose any liability upon the sureties who signed his official bond; but there he was not appointed receiver in his official capacity as clerk, but independently; and in *Boothe v. Upchurch, supra, Justice Avery* refers to that case, and states that the act of 1868 (Battle's Rev., ch. 53, sec. 22) was afterwards amended, to meet the decision of this Court therein, by The Code, sec. 1585 (Revisal of 1905, sec. 1813).

In *Waters v. Melson, supra, Shepherd, C. J.,* further explains and distinguishes the case of *Kerr v. Brandon, supra.* But it will be seen by a careful examination of the latter case that the reasoning of the Court sustains fully our conclusion that the clerk's bond is liable for this fund. See, also, *Thomas v. Connelly,* 104 N. C., 342, and *Smith v. Patton,* 131 N. C., 396.

In the case last cited the present *Chief Justice* states the rule definitely and collects the principal authorities. No further discussion, therefore, is required.

Second. As to the payments to W. W. Stringfield from 4 August, 1908, to 1 June, 1909, both dates inclusive, amounting to $550 in all, the court was clearly right in reversing the referee's ruling by which defendant was charged with that sum and interest. The amount was paid by defendant to Stringfield under an order of the court previously made, and it authorized the disbursement for services rendered the estate. The mere fact that the order had been lost cannot deprive the defendant of his right to the credit. There is not any doubt as to its having been made, and the referee finds that it was made and signed by the court. As this finding of fact was approved by the judge, it concluded the matter. The failure to record the order could not prejudice the defendant's right to pay or W. W. Stringfield's right to receive the money. *In re Black,* 162 N. C., 457, 459. But while this is true, we do not see that the plaintiff is in any position to object to this ruling. He

has not perfected any appeal or assigned any errors. The judge properly overruled the referee's conclusions of law upon this finding.

Third. The exception of the defendant as to the charge of interest at the rate of 5 per cent on the fund realized from the sale of the "Cold Mountain tract" must be sustained. He should be charged only with interest at the rate of 4 per cent, the amount he received. The defendant was ordered by the court to deposit this fund, less the amount of the payment to Hugh A. Love, in the Bank of Waynesville and take for the same a certificate of deposit payable to himself and bearing "the best rate of interest obtainable for the same." He complied with this order as nearly as the requirements of the trust and the necessity of his checking upon the fund would permit. The court afterwards ordered certain amounts to be paid from this fund by the clerk, and he could not comply with the order without drawing checks on the bank for the same. In order to deposit the fund so that it would draw interest at the highest rate, and at the same time be subject to his checks, he agreed with the bank to deposit the fund with it at 4 per cent interest, this rate being the best he could secure on a checking account. It appears by the findings of the referee, approved by the court, that the bank would not allow 5 per cent, or any greater rate than 4 per cent, unless the entire amount was allowed to remain in the bank for six months on special deposit, called "time deposit" or "certificate of deposit" in the referee's report. As to the proceeds received from the sale of the Martin tract, which was $1,020, he was not able to deposit it so that it would draw interest, as in the case of the other fund. We are unable to understand, though, why the contention of the plaintiffs is not the correct one, that defendant should have checked first upon the noninterest-bearing account in the bank before he resorted to any part of the other deposit which bore interest. The referee and the court ruled in accordance with this contention, and the account, in this respect, was properly stated. The defendant was not charged with any interest on the fund derived from the sale of the Martin tract of land, $1,020, and was allowed commissions on the same. He should be charged only with interest at the rate of 4 per cent on the other fund, as that was all he received or could have obtained under the circumstances, and his management of this fund was in substantial compliance with the order of the court. There is no evidence that he applied any part of the money to his own purposes or that he made any profit therefrom for himself.

Fourth. The exception by defendant as to the charge of 12 per cent interest after plaintiffs' demand for payment under Revisal, sec. 284, cannot be passed upon without additional findings of fact. It appears by the plaintiffs' own admission in the testimony that the parties agreed to settle, and were proceeding to do so, when the plaintiff "broke up the settlement" because he was not willing to allow the defendant the receipts

for the money paid to W. W. Stringfield. If defendant was able, ready, and willing to pay the defendant all that was then due, except that item, and offered to do so, or if plaintiff refused to accept the undisputed part, if there was such a part, unless the Stringfield receipts were excluded from the settlement, and not allowed in reduction of the amount to be paid by defendant, the defendant was not in default, but the fault was all the plaintiffs', and the latter could not recover the higher rate of interest.

It was held in *Bond v. Cotton Mills,* 166 N. C., 20, 23, that "interest, by way of damages, is not allowed as a conclusion of law, unless there has been some adequate default on the part of a debtor in reference to withholding the principal sum or a part of it," citing several authorities, the exception being in those cases governed by Revisal, sec. 1954. We cannot decide the question, though, without specific findings as to what was done by the parties at the attempted settlement, and as to what amount, if any, was then in the defendants' hands and due to the plaintiffs, the amount paid to Stringfield being allowed to defendant as a credit. Was there any clear balance? If so, how much? If there was a balance, defendant's liability for the higher rate of interest will depend upon whether a tender was made by him of it or whether a tender was excused by the conduct of plaintiff. The facts may be found by the judge, a referee, or otherwise, as provided by law, unless the parties can agree upon them. When they are ascertained, the judge will rule upon them as to this item of interest.

Fifth. The defendant should have been allowed his commissions. We see nothing in his conduct of the business to indicate that he was unfaithful to his trust. It is said in 18 Cyc., 1162, where the law is fully and clearly stated, that compensation should be allowed unless there has been some act or omission calling for punishment. In this case there is no evidence of fraud, willful default, or gross negligence which caused detriment to the estate, but it appears that it has been benefited by the services rendered. We find nothing in the report of the referee or in the administration of his trust by defendant to indicate any conversion, misapplication, or commingling of funds, or any other improper conduct in receiving and disbursing the same. It would not be right that plaintiff, and those he represents, should enjoy the benefit of defendant's services and not pay him for them. 18 Cyc., 1162, 1163, 1164, 1165.

This Court said in *Perkins v. Caldwell,* 79 N. C., 441, 445: "It is stated by his Honor that the executor acted in good faith and with strict integrity, and as we see nothing to the contrary, there is no reason why commissions should be withheld from him." In revising the account, commissions will be allowed, at a rate to be fixed by the court, as the law directs. The contention of plaintiff, based upon Revisal, sec. 2773,

as to commissions of the clerk, cannot be sustained.   That section does not apply to the facts as they appear in this record.

No question was raised as to whether this action should have been brought by the clerk's successor under Revisal, sec. 906, 907, 908, and, therefore, we have not considered it, and do not express or mean to intimate any opinion in regard to it.

The report and judgment will be modified in accordance with this opinion, and the case will proceed further in the court below as indicated by us.

Error.