R. S. CHAPPELL, JET MILLER, C. M. CHAPPELL, RALPH WOOD, D. T. WHITEHURST, W. T. MIDGETT, CHARLIE WILSON, A. L. AYDLETT AND FRANK SPENCE, v. G. H. WINSLOW, JR., AND WIFE, EVIE WINSLOW.

(Filed 1 February 1963.)

1. **Trial § 26—**

A complaint alleging that defendants were digging a canal and proposed to change the drainage on their land so as to drain surface waters into the canal then being cut, with evidence that a wrongful diversion of water was being effected by the cutting of ditches perpendicular to the canal to drain into the canal, without controversy as to defendants' right to cut the canal, *held* not to warrant nonsuit for variance, there being no element of surprise and the pleadings being liberally construed with a view to substantial justice between the parties.

2. **Pleadings § 4—**

The relief is determined by the allegations and evidence and not the prayer for relief.

3. **Pleadings § 24—**

Motion to amend after the beginning of trial is addressed to the discretion of the trial court and is not appealable.

4. **Appeal and Error § 41—**

The exclusion of evidence relating to a subordinate matter which could not possibly affect the ultimate rights of the parties will not be held prejudicial.

5. **Appeal and Error § 49—**

The findings of fact of the trial court which are supported by competent evidence are binding on appeal even though there be competent evidence to the contrary.

6. **Evidence § 35—**

Persons who live and work in a locality of flat land with constant problems of drainage of surface waters may testify that the drainage of an additional specified acreage into a ditch would cause the ditch to overflow periodically, and may testify as to the size of ditches and culverts which would be necessary to carry such additional drainage, the testimony being testimony of common observers as to the results of their observation.

7. **Appeal and Error § 49—**

In a trial by the court under agreement of the parties it will be presumed that the court disregarded any incompetent evidence in making its findings, there being nothing in the record to suggest that the court was in any way influenced in its findings by incompetent evidence.

8. **Waters and Water Courses § 1—**

Where the evidence discloses that the area was constantly subject to drainage problems, that defendants were cutting ditches to divert sur-

face waters on their lands into a canal flowing by the lands of lower proprietors, and that such additional waters would cause an overflow of such ditch in each recurring heavy rain, rendering plaintiffs' plumbing facilities useless and creating a hazard to health, defendants may be restrained from opening such ditches, even prior to the occurrence of actual injury, injunction being a preventive remedy.

**9. Injunctions § 14—**

Where the court properly enters a restraining order against defendants, provision of the order that the injunction should terminate if defendants took specified action which would obviate injury to plaintiffs, *is held* not subject to objection on the part of defendants, since such provision is inserted for defendants' benefit and they are not compelled to comply.

APPEAL by defendants from *Morris, J.* January 1962 Term of PASQUOTANK.

Action by plaintiffs to restrain defendants, adjoining landowners, from collecting surface water and discharging it upon the property of plaintiffs.

The following facts are not in dispute:

Plaintiffs and defendants own property on the west side of U. S. Highway No. 17, north of the Foreman-Bundy Road, about three miles south of Elizabeth City. U. S. Highway No. 17 (hereinafter called Highway) extends southwesterly from Elizabeth City. However, it is referred to as running generally north and south. South of the plaintiffs' property the Foreman-Bundy Road (hereinafter called Road) intersects the Highway from the west. Prior to 1924, when it was widened and paved, the Highway was known as the "Old Desert Road." In 1924, the old ditch which had run along the western edge of the Desert Road was filled and a new one, approximately three feet deep, four to eight feet wide at the top, and two to four feet wide at the bottom, was left to drain the Highway.This ditch constitutes the eastern property line of all the parties and is the eastern line of plaintiffs' yards.

The State Highway Commission claims a right-of-way of fifty feet on each side of the center of the Highway but it has no recorded right-of-way. The primary purpose of this ditch is to drain the Highway but, according to the testimony of its district engineer, the Commission does not claim the ditch. It has not serviced it either north or south of the Road nor has it prevented other people from servicing it. Plaintiffs' homes are located from twenty-five to sixty feet from this highway ditch and about forty-five feet from the right of-way. It is about thirty-six feet from the center of the Highway to the yards of the plaintiffs.

Plaintiff Whitehurst lives in the northwest corner of the intersection of the Road and the Highway; the other plaintiffs have residences north of Whitehurst; and the defendants' property is north of the plaintiffs, 1,740 feet from the Road. A driveway gives each plaintiff access to the Highway and under each driveway is a culvert in the highway ditch.

Parallel to the Road, on the south side, is a canal which turns at the Highway and runs southwardly with it on the west side for approximately three hundred feet before it goes through a culvert under the Highway south of a truck stop and 4,740 to 5,240 feet south of defendants' south property line. It then continues over a half a mile before emptying into a swamp. The ditch on the west side of the Highway north of the Road connects with the canal south of the Road through a culvert installed by the Highway Commission.

In 1956, defendants purchased the south portion of the old Foreman Dairy Farm from J. W. Foreman. It is a tract of approximately 320 acres. The surface water from this land which went into the highway ditch flowed both north and south. That which went south flowed past the lands of the plaintiffs through their culverts and the culvert under the Road and thence into the canal under the Highway.

In the summer of 1957, defendants started cleaning out and excavating the ditch between their property and the Highway. When they had gone north 1,700 to 1,800 feet from their south line, on July 5, 1957 plaintiffs instituted this action and defendants were enjoined from proceeding further. The temporary restraining order was made returnable before the Honorable Chester R. Morris, Resident Judge of the district, who heard the matter on July 20, 1957. Upon the hearing the parties agreed: "(1) That the defendant may continue the cutting, cleaning out or excavation of the ditch, or canal, along the west side of U. S. 17 to the north end of the property of defendant, all without prejudice to the rights of the parties involved. (2) That pending the final determination of this action the defendant will not open any drains in the aforesaid ditch or canal." The judge entered an order in conformity with this agreement.

In 1957, defendant cut a ditch (designated as No. 5 on the court map) which began about one hundred feet west of the Highway and 2,600 feet north of the defendants' south property line and ran west for 4,300 feet to a canal known as the Foreman Ditch, a recognized portion of the drainage system of the Foreman Dairy Farm. This canal connected with others which eventually drained into Little River. About three and a half years after the consent order was entered, defendants cleared approximately seventy-five acres of cutover

woodland between ditch No. 5 and plaintiffs' property. In the summer of 1961, in this area, defendants cut ditches designated on the map as Nos. 1, 2, 3, and 4. Ditch No. 1 stopped 150 feet west of the Highway but ditches Nos. 2, 3, and 4, emptied into the highway ditch which had been enlarged by the defendants in 1957. These ditches were approximately 2,000 feet long and were 253 feet apart. Connecting these ditches with the highway ditch violated the restraining order, and thereafter defendants placed a dirt fill in each which prevented drainage from them entering the highway ditch.

When this matter came on for trial at the January 1962 Term, the parties waived a jury and his Honor, Chester Morris, the Presiding Judge, heard the evidence and made several inspections of the *locus in quo.* Thereafter, in conformity with G.S. 1-172, he found the facts and stated his conclusions of law.

*Inter alia,* the judge found the following facts:

Because their drainage facilities were not adequate, about 1952, at a cost of approximately $2,000.00 for labor and rights-of-way, the plaintiffs widened and deepened the highway ditch south of the Road and made it into the present canal. The Highway Commission has never exercised any control or supervision over this canal. (According to plaintiffs' evidence, pipes from their properties go under the Foreman Road into the ditch on its south side, then into the highway ditch under the Highway, and into the swamp; plaintiffs have no artificial drains directly into the highway ditch.)

At the time the plaintiffs widened and deepened the ditch they inquired of defendants' predecessor in title, J. W. Foreman, if he desired to come into the project. He declined to contribute on the ground that his property did not drain to the south.

The land of both plaintiffs and defendants is level low land with little variation in elevation. ". . .(T)he drainage of this area will always be problematical due to the low flat condition of the land in the area." If not collected into artificial drains or ditches, a portion of the surface water falling upon the defendants' lands would flow westward toward the Forman Ditch, but the greater portion would flow eastward toward the highway ditch. Upon reaching the highway ditch, from a point 2,600 feet from defendants' south property line, and at the mouth of ditch No. 5 if it were extended straight to the Highway, water would flow in each direction. However, the greater portion would flow southwardly upon lands of the plaintiffs. If ditches Nos. 1, 2, 3, and 4, and such other ditches as defendants might cut through their land were opened from the Highway to the Foreman Ditch, surface water collecting in them would flow in each direction but mostly into the highway ditch.

It is not practical for the defendants to drain all of their land through the Foreman Ditch. The construction of ditches through only a portion of the defendants' lands, without connecting them with the Foreman Ditch, results in the collection of water in amounts in excess of that which would normally flow east and therefore imposed a greater servitude upon the plaintiffs' land. For many years the greater portion of the lands now owned by the defendants has drained towards the Highway and, in years gone by, lateral ditches have been in existence. Pipes under the plaintiffs' driveways to some extent impede the passage of water in the highway ditch, and plaintiffs' present drainage facilities are not sufficient for their own need or to drain off the additional waters from defendants' land if it is artificially collected into ditches.

The judge concluded the lands of the plaintiffs are burdened with the surface water from the defendants' land which flows naturally into the highway ditch; that they must receive it into their canals, but that defendants are not entitled to drain into the highway ditch surface water from ditches spaced about 250 feet apart and cut only a portion of the way through their farm. He restrained the defendants from connecting the ditches already cut with the highway ditch unless they were extended at the same width, depth and level to the Foreman Ditch. His order provided, however, that in lieu of cutting ditches all the way through their property to the Foreman Ditch, the defendants might, if they desire, cut a ditch from No. 5 across their farm at the western terminus of the present ditches Nos. 1, 2, 3, and 4, and any other ditch which might hereafter be constructed, provided that this cross-farm ditch be the same depth as the eastern terminus of ditches Nos. 1, 2, 3, and 4, and provided that present ditch No. 5 be widened and deepened so that its level will be the same at its eastern and western terminus. In the event the defendants should elect to drain the farm according to the plan outlined by the judge, the restraining order would terminate.

The judge found that up to the date of the institution of the action, plaintiffs had suffered no damage from the action of the defendants.

Plaintiffs neither excepted to the judgment nor appealed from it. The defendants excepted and appealed, assigning thirty-nine errors.

*John H. Hall, and Worth and Horner for plaintiff appellees.*
*Leroy, Wells and Shaw for defendant appellants.*

SHARP, J.    Defendants assign as error the failure of the judge to nonsuit plaintiffs' action. They contend that there is a material and

fatal variance between the allegations and proof in that plaintiffs alleged, and sought to enjoin, damage which would result if defendants widened and deepened the north-south highway ditch along the west edge of the Highway; whereas their evidence, and subsequent events, showed that they were attempting to prevent defendants from connecting east-west ditches with the highway ditch. Defendants further contend that they, with the consent of the plaintiffs, were permitted to clean out, widen and deepen the highway ditch the length of their property and that the action is now moot and should be dismissed.

With these contentions we cannot agree. The crux of plaintiffs' complaint is paragraph 5 which follows:

> "That defendants, over the protest of plaintiffs, have now begun the digging of a canal parallel to the east side of the lands owned by them and leading southwardly parallel to said Highway 17 to the lands of plaintiffs and purpose to reverse the drainage of the lands of defendants from the west to the east and into the canal now being cut by defendants and turning all of the water therefrom on the lands of plaintiffs."

It is implicit in this evidence, and in the consent order entered on July 20, 1957, that the plaintiffs do not fear any flooding from the natural drainage of defendants' land into the highway ditch. What they fear is the artificial collection of water from defendants' property into ditches which funnel it into the highway ditch to run south onto their property. This the judge restrained — by consent on July 20, 1957, and by final judgment on March 30, 1962.

While the complaint did not specifically ask that the defendant be restrained from opening east-west ditches into the highway canal, within fifteen days after the suit was started defendants themselves agreed not to open such ditches pending the trial. No element of surprise appears. It is the rule with us that the relief to be granted does not depend upon that asked for in the complaint but upon whether the matters alleged and proved entitle the complaining party to the relief granted. *Griggs v. York-Shipley, Inc.*, 229 N.C. 572, 50 S.E. 2d 914. The following statement by Chief Justice Merrimon in *Presson v. Boone*, 108 N.C. 79, 12 S.E. 897, is pertinent here:

> "*While it is far better and very desirable that the pleadings shall be directly pertinent, precise and orderly,* still when they can be upheld as sufficient, this must be done, if to do so works no injustice to a party. This is the spirit and purpose of the present method of civil procedure." (Italics ours.)

The motions for nonsuit were properly overruled.

At the beginning of the trial the defendants moved to be allowed to amend the answer "to allege that a part of the system of drainage referred to in the complaint and in the answer as 'defendants' system of drainage' had been dammed by a dirt fill by at least one of the plaintiffs and that this damming occurred approximately two weeks ago." The judge denied this motion. The denial was a matter within his discretion and not appealable.

Thereafter the defendants attempted to offer evidence about *a* fill, presumably the one referred to in the motion although this cannot be ascertained from the motion. The judge excluded the evidence and defendants assign this exclusion as error. They contend the evidence was competent to contradict plaintiffs that their drainage ditches were taxed to capacity because the fill would *"to some extent* create a flooded condition of plaintiffs' property." (Italics ours.)

The excluded evidence tended to show the following:

The fill in question was in a ditch on the southwest side of the Old Desert Road where it joined the Highway some distance south of the truck stop. The fill had been put there in the first instance by the State Highway Commission and then removed. About two weeks before the trial one of the plaintiffs replaced it. Water was higher on the west side of the fill than on the east.

There appears in the record a temporary restraining order signed by Judge Morris on December 29, 1961 enjoining the plaintiffs from placing any fill in the ditch along the southwest side of the Old Desert Road. This order was returnable on January 12, 1962, but the record does not show what was then done. The effect of the fill is far from clear from the proffered evidence. If the exclusion of this evidence was error, it involved a situation of only two weeks duration immediately preceding the trial, and its exclusion will not upset the trial. The judge who heard the excluded evidence also saw the fill. He ruled the evidence incompetent and, on this record, prejudice does not appear.

Defendants' assignments of error 23 through 36 are to the findings of fact made by the judge. The defendants' discussion of these assignments of error in their brief is as follows:

> "It is respectfully submitted that these findings of fact insofar as they support the plaintiffs' position and prejudice the rights of the defendants, are not supported by the evidence, nor any evidence of sufficient probative force to be considered by the court. It is reversible error for the judge to admit and act upon incompetent evidence in finding facts."

As to those assignments, appellants' brief is a "pass brief" such as was condemned in *Jones v. R. R.,* 164 N.C. 392, 80 S.E. 408; *Crowell v. Air Lines,* 240 N.C. 20, 31, 81 S.E. 2d 178. However, except for an obvious and immaterial error in the date of the preliminary restraining order in finding No. 2, and a likewise immaterial statement in finding No. 4 (which statement is admitted to be true in defendants' brief), all of the judge's findings are supported by competent evidence. These findings are therefore binding on this Court even though there was evidence to the contrary. *Cauble v. Bell,* 249 N.C. 722, 107 S.E. 2d 557.

Plaintiffs offered evidence that sometime prior to July 1957, defendant Winslow told one or more of them that he intended to drain from 250 to 300 acres into the highway ditch. Defendant denied this and testified that he only intended to drain from 185 to 200 acres into the ditch by means of ditches, varying from 2,000 to 4,000 feet in length, spaced about 250 feet apart from ditch No. 5 to his south property line next to plaintiffs. Plaintiffs' evidence tended to show that the highway ditch north of the Road (as well as the other ditches which constituted this drainage system) was already taxed to capacity in wet weather; that after heavy rains, yards and septic tanks were flooded and plumbing facilities would not drain.

The defendants objected to testimony of the plaintiffs, and of others who lived and worked in the vicinity, who were familiar with the drainage system under consideration, that if defendants drained 200 acres of their lands into the highway ditch, this drainage would from time to time cause the ditch to overflow at either end of their property and flood their lands. Over objection, these same witnesses expressed opinions as to the size of the ditch and culverts which would be necessary to carry such additional drainage from the defendants' lands south. Defendants contend that this testimony was incompetent opinion evidence by lay witnesses. We think it was competent as "the evidence of common observers testifying as to the results of their observation." Stansbury, Evidence, Section 125.

The conscientious judge who heard this case lives in the area and was thoroughly familiar with its drainage problems. He made not one but several personal inspections of the properties. Even if some incompetent evidence had been admitted, which we do not decide, his Honor was peculiarly qualified to weigh the evidence and to disregard the incompetent. There is a rebuttable presumption that when the court sits without a jury it acts only on the basis of competent evidence. *Bizzell v. Bizzell,* 247 N.C. 590, 101 S.E. 2d 668. There is nothing whatever in the record to suggest that incompetent evidence in any way influenced his findings of fact or final judgment.

The defendants concede this well established principle of law: Where two tracts join each other, one being lower than the other, the lower tract is burdened with an easement to receive waters from the upper tract which flow naturally therefrom. The owner of the upper tract may increase the natural flow of water and may accelerate it, but he cannot divert the water to cause it to flow in a lower land in a different manner or in a different place from which it would naturally go. *Braswell v. State Highway and Public Works Commission*, 250 N.C. 508, 108 S.E. 2d 912.

The judge found, upon competent evidence, that the defendants were the upper landowners. He ruled, therefore, that the plaintiffs must receive the waters which flow naturally therefrom. The next question was whether the defendants, unless prevented from doing so, would divert water from its natural course so as to cause plaintiffs injury for which they had no adequate remedy at law. The defendants' own testimony and prior acts established this intention.

The judge found that the plaintiffs' drainage facilities were not adequate under existing conditions. If as their evidence tended to show, heavy rains caused flooded septic tanks and made plumbing facilities useless, a hazard to health inevitably resulted. Additional water could only aggravate the existing situation. Such aggravations, recurring with every wet spell, would create a condition which the plaintiffs are entitled to restrain. *Wiseman v. Constr. Co.*, 250 N.C. 521, 109 S.E. 2d 248. In an action to enjoin one from collecting and discharging surface waters in volume upon plaintiffs' land, it is not necessary for the plaintiff to prove that actual injury has already occurred. The remedy is preventive and may be had upon proof that the act complained of, unless restrained, will result in damage. 56 Am. Jur., Waters, Section 85.

Defendants assigned as error the plan of drainage which his Honor designed for their lands and which, if adopted by defendants, would terminate the injunction. The plaintiffs might have effectively objected to this plan. They did not, and the defendants may not. It was intended for defendants' benefit but they are not required to adopt it. Upon the facts found, the plaintiffs were entitled to the injunction granted.

If the defendants' property is inadequately drained, and they do not care to adopt his Honor's plan to which the plaintiffs assented when they did not appeal, defendants are not without remedy. The provisions of Chapter 156 of the General Statutes are still available.

No error.