[Civ. No. 27032. First Dist., Div. One. Aug. 14, 1970.]

In re SAMUEL Z., a Person Coming Under the Juvenile Court Law.
JAMES D. CALLAHAN, as Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
SAMUEL Z., Defendant and Appellant.

## COUNSEL

John D. Nunes, Public Defender, Paul L. Rein and William A. Keep, Assistant Public Defenders, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Clifford K. Thompson, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ELKINGTON, J.**—Samuel Z., a minor, appeals from a "judgment" of the juvenile court concluding that he had violated the provisions of Health and Safety Code section 11912 and that he was a person described by Welfare and Institutions Code section 602, and committing him for placement in the Alameda County Boys' Camp.

At the time of the juvenile court proceedings Samuel was 15 years old. He had a considerable record of delinquency including a robbery charge (purse snatching) which was reduced to grand theft and for which he was on probation. The proceedings which resulted in commitment to the boys' camp concerned his sale of restricted dangerous drugs to a 13-year-old junior high school student whom we shall call Steven.

The record before us discloses the following. Steven testified he had spent "the night [of March 8, 1969] under my friend's house and on the next morning" there "was a thing I kicked over and under the stack I saw a box, a box and I looked inside, and so I looked inside and marijuana cigarettes were there, and the papers and the match box and his dad came in. I think he saw Michael, so he called the Sheriff's Department and they came. So he took Mike upstairs. He asked him up to get Richard to find out whose they were. Michael—first, his dad said, 'Is Richard there' and

he said, 'No, he is asleep.' So Mike came back and his dad saw him so his dad knew and he watched him." It was Sergeant Souza of the sheriff's department, and perhaps others, who had arrived at the scene. Steven also testified he "could have just put the stuff away, but I decided to keep it, . . . so the officer grabbed me and took me outside, so they just started searching me and they looked in my back pocket" where they found what appeared to be a marijuana cigarette. Sergeant Souza, a few weeks later, received a laboratory report that the cigarette taken from Steven contained marijuana. Three or four days later, on April 16, 1969, he went to Steven's school; his "purpose was to go to the school and arrest him for possession of marijuana on the date that the cigarette was taken from his possession." Steven was taken out of the classroom to the vice-principal's office where the officer "advised him why he was being arrested and also advised him I was going to search him prior to taking him to the station." When the search started Steven removed from his pocket four red capsules, stating, "I might as well give you these." The capsules were secobarbitol, a barbituric acid derivative and a restricted dangerous drug. (See Health & Saf. Code, § 11901.) Steven said he had bought 12 of them from Samuel for $3 the day before. The juvenile court proceedings against Samuel followed.

■ At the juvenile court hearing Steven testified that he had purchased the secobarbitol tablets found on his person from Samuel. His testimony was not controverted. Samuel's defense appeared to have been based solely on the contention that there was no probable cause for Steven's arrest on April 16.

Samuel makes the same contention on this appeal. ■ But for Steven's unlawful arrest, he argues, the evidence of his sale to Steven could not have been produced at the juvenile court hearing. Relying principally on *Wong Sun* v. *United States,* 371 U.S. 471 [19 L.Ed.2d 441, 83 S.Ct. 407], and *People* v. *Johnson,* 70 Cal.2d 541, 549 [75 Cal.Rptr. 401, 450 P.2d 865], he insists that the evidence should have been excluded on his objections as "fruit of a poisonous tree."

■ We have concluded that Steven's April 16, 1968 arrest was lawful and that Samuel's contention is therefore without merit.

On March 8, 1969, Sergeant Souza responded to a call from the person under whose house Steven was hiding. Steven was apprehended and "grabbed" by the officer and taken "outside" where a search of the boy disclosed a suspicious looking cigarette. The cigarette was then taken for an analysis to a laboratory which some weeks later reported its contents

to be marijuana. The sergeant was entitled to rely on this report from official sources. (See *People* v. *Turner,* 2 Cal.App.3d 632, 635 [82 Cal.Rptr. 763]; *People* v. *Kraps,* 238 Cal.App.2d 675, 679 [48 Cal.Rptr. 89]; *People* v. *Jackson,* 202 Cal.App.2d 569, 574 [21 Cal.Rptr. 44].) He accordingly then had reasonable cause to believe that Steven had committed a public offense (possession of marijuana—Health & Saf. Code, § 11530) in his presence, thus justifying the arrest which was made three or four days later.

■ A peace officer may make an arrest without a warrant whenever "he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence." (Pen. Code, § 836; *People* v. *Lovio,* 222 Cal.App.2d 79, 82 [34 Cal.Rptr. 747]; *People* v. *Russell,* 196 Cal.App.2d 58, 63 [16 Cal.Rptr. 228]; *People* v. *Anguiano,* 198 Cal.App.2d 426, 430 [18 Cal.Rptr. 132].) The fact that Sergeant Souza chose to make certain by a time-taking laboratory report that the substance taken from Steven was in fact marijuana, cannot reasonably defeat the statutory right to make the arrest without a warrant. Such caution serves the public interest—and the interest of one suspected of crime. It certainly does not bring into play otherwise nonexistent Fourth Amendment rights.

No contention was made by Samuel in the juvenile court that the earlier search of Steven resulting in the discovery of the marijuana was in any way improper. His tardy contentions on that point will not now be considered by us. ■ "The admissibility of evidence will not be reviewed on appeal in the absence of a proper objection in the trial court." (*People* v. *Johnson,* 253 Cal.App.2d 396, 400 [61 Cal.Rptr. 225].)

■ An additional issue has arisen since Samuel's hearing in the juvenile court. This issue is raised by *In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068], and applying the "beyond a reasonable doubt" standard of proof at the adjudicatory stage of juvenile court proceedings. Since the instant hearing was held when the "preponderance of the evidence" rule appeared applicable (see Welf & Inst. Code, § 701; *In re Dennis M.,* 70 Cal.2d 444, 460 [75 Cal.Rptr. 1, 450 P.2d 296]), we deem it proper to reverse the appealed-from decision and remand the cause to the juvenile court for reconsideration of, and decision on, the existing record in compliance with the demands of *Winship.* (See *In re C.D.H.,* 7 Cal.App.3d 230 [86 Cal.Rptr. 565].)

The judgment and order of May 6, 1969, are reversed; the juvenile court

will make new findings on the present record in accordance with the dictates of *In re Winship, supra,* 397 U.S. 358, and thereafter take further and appropriate proceedings.

Molinari, P. J., and Sims, J., concurred.