IN THE MATTER OF VALERIE LENISE WALKER

No. 26

(Filed 11 October 1972)

1. Infants § 10— undisciplined child petition — no right to counsel

Neither the Due Process Clause nor G.S. 7A-451(a)(8) required that counsel be afforded a minor at a hearing on an initial petition alleging her to be an undisciplined child, for under the wording of G.S. 7A-286(4) (1969) that hearing could not result in her commitment to an institution in which her freedom would be curtailed.

In re Walker

2. **Courts § 15; Infants § 10— undisciplined child petition — criminal proceedings**

   The "critical stage" test used by the U. S. Supreme Court in determining the scope of the Sixth Amendment right to counsel in criminal prosecutions is not applicable to a juvenile proceeding in which the child is alleged to be undisciplined because such proceeding is not a criminal prosecution within the meaning of the Sixth Amendment which guarantees the assistance of counsel "in all criminal prosecutions."

3. **Courts § 15; Infants § 10— undisciplined children — adults — probation and incarceration — equal protection under the laws**

   Though G.S. 7A-286 subjects an undisciplined child to probation and the concomitant risk of incarceration when the child has committed no criminal offense, while adults are subjected to probation and incarceration only for actual criminal offenses, the statute does not violate the Equal Protection Clause by classifying and treating children differently from adults since the classification is based on the difference in ability of adults and children to protect themselves and since the statute is intended to provide children with needed supervision and control.

4. **Courts § 15; Infants § 10— undisciplined child — delinquent child — right to counsel — equal protection under the laws**

   The State's statutory scheme allowing a child to be adjudged undisciplined and placed on probation without benefit of counsel, while at the same time requiring counsel before a child may be adjudged delinquent does not deny equal protection of the laws to the undisciplined child since, in seeking solutions which provide for the protection, treatment, rehabilitation and correction of children, it is relevant to the achievement of the State's objective that distinctions be made between undisciplined and delinquent children. G.S. 7A-278(5); G.S. 7A-285; G.S. 7A-286(2) and (4).

5. **Courts § 15; Infants § 10— juvenile delinquency hearing — due process**

   In delinquency proceedings wherein a child was charged with violation of probation conditions, the Due Process Clause did not require that the judge make findings beyond a reasonable doubt since the delinquency charge did not arise from violations amounting to a crime.

6. **Courts § 15; Infants § 10— juvenile delinquency proceeding — inference with respect to quantum of proof**

   Since there is no statutorily established quantum of proof in juvenile proceedings in North Carolina, in the absence of record evidence that the judge followed some other standard, there is a permissible inference that he followed the applicable law and found the facts beyond a reasonable doubt.

   Chief Justice BOBBITT dissenting.

   Justice SHARP joins in dissenting opinion.

RESPONDENT appeals from decision of the Court of Appeals upholding order of *Gentry, District Judge,* 11 October 1971 Session, GUILFORD County District Court.

On 2 August 1971 Mrs. Katherine Walker, mother of Valerie Lenise Walker, filed a petition in the district court alleging in pertinent part:

"1. That the above named child is less than sixteen years of age and resides in the district at the address shown above, or was found in the district as alleged herein.

2. That the names and addresses of the child's parents ... are as follows:

> Name: Mr. & Mrs. John Walker
> Relation or Title: Parents
> Address: 541 E. Bragg Street
>     Greensboro, North Carolina

3. Said child is an undisciplined child as defined by G.S. 7A-278 in that she has been regularly disobedient to her parents during the last six months; that the said child will not mind and obey; that the child goes and comes as she pleases and keeps late hours; that the child associates with persons of questionable character and frequents places not approved by the parents; further, that the child is almost beyond the control of her parents.

Petitioner prays the court to hear the case to determine whether the allegations are true and whether the child is in need of the care, protection or discipline of the State."

A juvenile summons was thereupon issued and served upon Valerie Lenise Walker and her parents on 9 August 1971, summoning them to appear in juvenile court for a hearing on the allegations in the petition, copy of which was served with the summons.

The matter came on for hearing before Judge Gentry on 17 August 1971. Valerie was present with her mother and the court counselor, Mrs. Ann M. Jones. Valerie was not represented by an attorney at this hearing. Judge Gentry heard evidence and found (a) that Valerie Lenise Walker, born 14 April 1957, is a child under sixteen years of age in the custody and under the supervision and control of her parents, Mr. and Mrs.

John Walker; (b) that Valerie has been regularly disobedient to her parents in that she goes and comes without permission, keeps late hours, associates with persons that her parents object to, and goes to places where her parents tell her not to go; and (c) that Valerie is an undisciplined child and in need of the discipline and supervision of the State. This order was signed on 19 August 1971.

Based on the foregoing findings, it was ordered, adjudged and decreed that Valerie was an undisciplined child within the meaning of the law. She was placed on probation subject to the following conditions:

"1. That she be of good behavior and conduct herself in a law-abiding manner;

2. That she mind and obey her parents and not leave home without permission and then to go only to places that she has permission to go and return as directed;

3. That she attend school regularly during the school year and obey the school rules and regulations;

4. That she report to the court counselor as directed, truthfully answer questions put to her concerning her conduct, behavior, associates and activities and carry out requests given her concerning such;

5. That this matter be reopened for further orders on March 22, 1972 at 2:00 p.m.

This matter is retained for further orders of the court."

Thereafter, on 21 September 1971, Ann M. Jones, Court Counselor, filed a verified petition and motion in the cause for further consideration and review of the case, alleging:

"That the said child is a delinquent child as defined by G.S. 7A-278(2) in that the said child has violated Conditions No. 1, 2, and 3 of the probation order dated August 19, 1971, in that the said child continuously disobeys her parents in that she goes and comes as she pleases; keeps late hours; and frequents places not approved by her parents; further, the said child refuses to obey school rules and regulations in that she misbehaves in the class-

In re Walker

room and is disrespectful to school officials; further, the said child is beyond the control of her parents."

A juvenile summons was thereupon issued and served upon Valerie and her parents, notifying them to appear in juvenile court for a further hearing upon the matters alleged in the motion, copy of which was served with the summons on 22 September 1971.

Prior to the hearing the public defender of the Eighteenth Judicial District was appointed to represent Valerie, and the matter came on for hearing before Judge Gentry on 15 October 1971. At that time Valerie was present with her mother and was represented by Wallace C. Harrelson and J. Dale Shepherd, Public Defenders. Present representing the State was Thaddeus A. Adams, III, Assistant Solicitor.

Prior to the introduction of evidence, Valerie's counsel moved to vacate the order dated 19 August 1971 finding that Valerie was an undisciplined child and placing her on probation for that she was not represented by counsel at that time and was unable to defend herself on the charge that she was an undisciplined child, resulting in a denial of due process. Her counsel further moved to dismiss the petition and motion in the cause filed 21 September 1971 by Ann M. Jones, Court Counselor, for that G.S. 7A-278 violates the Equal Protection Clause of the Fourteenth Amendment in that the statute provides for an adjudication of delinquency when the respondent has violated none of the laws of the State of North Carolina. Both motions were denied and respondent duly excepted.

Katherine Walker, mother of Valerie, testified that she lives with her husband and seven small children, including Valerie; that she and her husband both work and that Valerie is usually not at home when she returns from work; that Valerie fails to do the chores which have been assigned to her, such as cleaning her room, the bathroom, and taking her turn washing dishes; that when Valerie comes home she usually says she has been at Mrs. Cunningham's house with Vanessa Cunningham; that Valerie has been told not to leave home without telling her mother where she is going but she continues to disobey in that respect; that Valerie keeps late hours and sometimes comes in at eleven, twelve, one and two o'clock at night; that Valerie has been to Paradise Inn in violation of

parental instructions; that Paradise Inn sells beer and has a bad reputation and is no place for a fourteen-year-old girl; that during Valerie's nocturnal absences her parents do not know where she is.

Mrs. Walker further testified that she is the mother of ten children; that Valerie is lazy and disobedient; that Valerie signed for a registered letter from school officials, addressed to her mother, and then destroyed the letter. Mrs. Walker said: "All I want her to do is to behave like a fourteen year old should."

Howard King, Assistant Principal at Mendenhall Junior High School, testified that Valerie came to his school on September 8, 1971, and was placed in special education with a group of students who had similar defects in adjusting; that from September 8 to September 21 he saw Valerie in his office many times on referral from all of her teachers except one for disrupting the class; that he had numerous conferences with Valerie and specifically recalls one problem which arose due to Valerie's refusal to dress out in the physical education class; that she refused to dress for physical education practically every day and gave no reason for her refusal; that he could not communicate very well with Valerie because she sucked her thumb, did not talk for a while, "and when she does start talking it's almost impossible to keep her from talking and it doesn't have any meaning to what we're talking about when she comes to the office. . . . It was not something that was relevant."

Mr. King further testified that Valerie was large for her age and as compared to the other children in the class; that Valerie was sent by her teachers to the office practically every day, does not fit into the classroom and disrupts whatever the teachers try to do; that he would have suspended her each day but had no way to get her home; that he simply required her to sit in the office and occasionally she would leave the office without permission; that Valerie does not respond to any methods of discipline available at the school.

The probation officer testified that Valerie had problems at her previous school similar to those described by Mr. King; that her attitude was bad toward her probation officer as well as others and that her behavior has not shown improvement; that Valerie does not have a receptive attitude toward

---

---

her probation officer or the school or her mother in regard to discipline.

The respondent elected to offer no evidence and moved to dismiss the proceeding at the close of all the evidence. The motion was denied, and under date of 27 October 1971 Judge Gentry signed an order providing in pertinent part as follows:

"The court finds, upon hearing evidence, that the child was before the court on August 17, 1971 and that she was adjudged to be an undisciplined child and placed on probation, one of the conditions of probation being that she be of good behavior and conduct herself in a law-abiding manner; another condition being that she mind and obey her mother and not be away from home without permission. Another condition was that she attend school regularly and obey the school rules and regulations. The court finds that the said child did not obey her parents in that she left home without permission and did keep late hours at night. That she went to places that she was told not to go to by her parents and that she failed to do chores assigned to her by her mother. The court further finds that the child was sent out of the classroom in school a number of times for disobeying the teachers and disturbing the class. That she also refused to dress for her Physical Education classes without giving any reasons for doing so. The court finds that these acts of the child constitute a violation of the conditions of probation and that she is a delinquent child for having violated the conditions of probation and that she is in need of the discipline and supervision of the state. Court further finds that since September 21, 1971, the said child has been a constant behavior problem in school and has not responded to disciplinary actions taken and that she continues to disobey her mother. The court finds that she is in need of more discipline and supervision than can be provided for her within Guilford County.

IT IS NOW THEREFORE ORDERED, ADJUDGED AND DE-CREED THAT Valerie Walker, having been found to be a delinquent child, that the said child is hereby committed to the North Carolina Board of Juvenile Correction and is to be in the custody and under the control and supervision of the officials thereof until discharged, in keeping

with the requirements of law. That she is to remain in the temporary custody of the court until she can be delivered to the designated correction school by Court Counselor Mrs. Jones.

This the 27th day of October, 1971.

B. GORDON GENTRY
JUDGE PRESIDING"

From the foregoing order respondent appealed to the Court of Appeals which found no error, 14 N.C. App. 356. Respondent thereupon appealed to the Supreme Court, allegedly as of right, asserting involvement of substantial constitutional questions arising under the Constitution of the United States and of this State.

*Wallace C. Harrelson, Public Defender, and J. Dale Shepherd, Assistant Public Defender, for the Respondent Appellant.*

*Robert Morgan, Attorney General, and R. S. Weathers, Assistant Attorney General, for the State of North Carolina, appellee.*

*Norman B. Smith of Smith, Patterson, Follin & Curtis, Counsel for Respondent Appellant's Amicus Curiae, North Carolina Civil Liberties Union Legal Foundation, Inc.*

HUSKINS, Justice.

[1] Appellant Valerie Walker contends that she had a constitutional right to counsel at the hearing on the initial petition alleging her to be an *undisciplined* child. We first consider whether the Constitution affords her such right.

In *In re Gault*, 387 U.S. 1, 18 L.Ed. 2d 527, 87 S.Ct. 1428 (1967), the United States Supreme Court held, *inter alia,* that "the Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency which may result in commitment to an institution in which the juvenile's freedom is curtailed, the child and his parents must be notified of the child's right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child." A similar statutory right to counsel for indigent juveniles at a hearing which could result in commitment to an institution is afforded by G.S. 7A-451(a)(8).

The initial petition alleging that Valerie was an *undisciplined* child was heard on August 17, 1971. At that time the 1969 version of Article 23, Chapter 7A of the North Carolina General Statutes (Jurisdiction and Procedure Applicable to Children) was in effect. It was not until September 1, 1971, that the present version of that article became effective. See 1971 Session Laws, ch. 1180. Therefore, we must consult the 1969 version to determine whether the hearing of the "undisciplined child" petition was a proceeding "which may result in commitment to an institution in which the juvenile's freedom is curtailed."

The 1969 version of Article 23 of Chapter 7A of the General Statutes, in relevant part, contains the following definitions in G.S. 7A-278:

"(1) 'Child' is any person who has not reached his sixteenth birthday.

"(2) 'Delinquent child' includes any child who has committed any criminal offense under State law or under an ordinance of local government, including violations of the motor vehicle laws or a child who has violated the conditions of his probation under this article.

"(5) 'Undisciplined child' includes any child who is unlawfully absent from school, or who is regularly disobedient to his parents or guardian or custodian and beyond their disciplinary control, or who is regularly found in places where it is unlawful for a child to be, or who has run away from home."

G.S. 7A-286 (1969), after requiring the judge to select the disposition which provides for the protection, treatment, rehabilitation or correction of the child, as may be appropriate in each case, makes the following alternatives available to any judge exercising juvenile jurisdiction: "(4) In the case of any child who is delinquent or undisciplined, the court may: a. Place the child on probation . . . ; or b. Continue the case . . . ; or, *if the child is delinquent,* the court may c. Commit the child to the care of the North Carolina Board of Juvenile Correction. . . . " (Emphasis added.)

Despite the somewhat awkward structure of G.S. 7A-286 (1969), it is clear that under its terms no judge exercising

juvenile jurisdiction had any authority upon finding the child to be *undisciplined* to commit such child to the Board of Juvenile Correction for assignment to a State facility in which the juvenile's freedom is curtailed. The statute permitted incarceration of *delinquent* children only. A contrary holding by the Court of Appeals in *In re Martin,* 9 N.C. App. 576, 176 S.E. 2d 849 (1970), is apparently based on a misconstruction of the statute and is not authoritative. We emphasize that there was no authority under G.S. 7A-286 (1969) for the commitment of an *undisciplined* child to the North Carolina Board of Juvenile Correction where the child may be assigned to a State facility in which the juvenile's freedom is curtailed.

Therefore, we hold that neither *Gault, supra,* nor G.S. 7A-451(a)(8) afforded Valerie Walker the right to counsel at the hearing on the initial petition alleging her to be an undisciplined child, for under the wording of G.S. 7A-286(4) (1969) that hearing could not result in her commitment to an institution in which her freedom would be curtailed. Nor would there be such a right under the statute as presently written. *See* G.S. 7A-286(5) (1971).

[2] Appellant would have this Court go further than *Gault* requires. She argues for the right to counsel at the hearing of an *undisciplined child* petition on the theory that such a hearing is a critical stage in the juvenile process since it subjects the child to the risk of probation and since a violation of probation means that the child is *delinquent* and subject to commitment. In such fashion appellant seeks to engraft upon the juvenile process the "critical stage" test used by the United States Supreme Court in determining the scope of the Sixth Amendment right to counsel in *criminal prosecutions. See Coleman v. Alabama,* 399 U.S. 1, 26 L.Ed. 2d 387, 90 S.Ct. 1999 (1970); *Gilbert v. California,* 388 U.S. 263, 18 L.Ed. 2d 1178, 87 S.Ct. 1951 (1967); *Hamilton v. Alabama,* 368 U.S. 52, 7 L.Ed. 2d 114, 82 S.Ct. 157 (1961). We find no authority for such engraftment. Whatever may be the proper classification for a juvenile proceeding in which the child is alleged to be undisciplined, it certainly is not a criminal prosecution within the meaning of the Sixth Amendment which guarantees the assistance of counsel "in all criminal prosecutions." *In re Burrus,* 275 N.C. 517, 169 S.E. 2d 879 (1969), aff'd. 403 U.S. 528, 29 L.Ed. 2d 647, 91 S.Ct. 1976 (1971).

The right to counsel delineated in *Gault* has not been extended to other procedural steps in juvenile proceedings. Neither this Court nor the United States Supreme Court has ever applied the "critical stage" test to the juvenile process. Accordingly, we hold that counsel is not constitutionally required at the hearing on an *undisciplined child* petition. See *In re Gault, supra* (n. 48) in which it is stated: "[W]hat we hold in this opinion with regard to procedural requirements at the adjudicatory stage has no necessary applicability to other steps of the juvenile process."

The fact that a child initially has been found to be undisciplined and placed on probation is merely incidental to a later petition and motion alleging delinquency based on violation of the terms of probation. The initial finding can never legally result in commitment to an institution in which the juvenile's freedom is curtailed. It is only the latter petition and motion, and the finding that the child is a *delinquent* child by reason of its conduct since the initial hearing, that may result in the child's commitment. *See* G.S. 7A-286(4)(b) and (c) (1969). *Compare State v. Green,* 277 N.C. 188, 176 S.E. 2d 756 (1970).

[3] Appellant's second contention is that G.S. 7A-286 violates the Equal Protection Clause of the Fourteenth Amendment in that it subjects an undisciplined child to probation and the concomitant risk of incarceration when the child has committed no criminal offense, while adults are subjected to probation and incarceration only for actual criminal offenses. *See* G.S. 15-197.

The Equal Protection Clause "avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary." *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 55 L.Ed. 369, 31 S.Ct. 337 (1911). Thus, if a classification is "based on differences that are reasonably related to the purposes of the Act in which it is found," then it does not offend the Equal Protection Clause, *Morey v. Doud,* 354 U.S. 457, 1 L.Ed. 2d 1485, 77 S.Ct. 1344 (1957); *State v. Greenwood,* 280 N.C. 651, 187 S.E. 2d 8 (1972), unless the classification affects "fundamental" interests or is "inherently suspect," *e.g., Williams v. Rhodes,* 393 U.S. 23, 21 L.Ed. 2d 24, 89 S.Ct. 5 (1968); *Harper v. Virginia Board of Elections,* 383 U.S. 663, 16 L.Ed. 2d 169, 86 S.Ct. 1079 (1966); *Douglas v. California,* 372 U.S. 353, 9 L.Ed. 2d 811, 83 S.Ct. 814 (1963); *Griffin v. Illinois,*

351 U.S. 12, 100 L.Ed. 891, 76 S.Ct. 585 (1956); *Skinner v. Oklahoma,* 316 U.S. 535, 86 L.Ed. 1655, 62 S.Ct. 1110 (1942), in which event it "must be closely scrutinized and carefully confined," and the State must advance a "compelling interest which justifies imposing such heavy burdens" in order for the classification to be constitutional. *Harper v. Virginia Board of Elections, supra; Williams v. Rhodes, supra.* A showing of mere rationality is insufficient.

The purpose of the Juvenile Court Act "is not for the punishment of offenders but for the salvation of children." *Commonwealth v. Fisher,* 213 Pa. 48, 62 A. 198 (1905). The Act treats "delinquent children not as criminals, but as wards and undertakes . . . to give them the control and environment that may lead to their reformation and enable them to become law-abiding and useful citizens, a support and not a hindrance to the commonwealth." *State v. Burnett,* 179 N.C. 735, 102 S.E. 711 (1920). The State must exercise its power as *"parens patriae* to protect and provide for the comfort and well-being of such of its citizens as by reason of infancy . . . are unable to take care of themselves." *McLean v. Humphreys,* 104 Ill. 378 (1882). Thus, juveniles are in need of supervision and control due to their inability to protect themselves. In contrast, adults are regarded as self-sufficient.

Therefore, the classification here challenged is based on differences between adults and children; and there are so many valid distinctions that the basis for challenge seems shallow. These differences are "reasonably related to the purposes of the Act"—that is, to provide children the needed supervision and control. Consequently, the classification does not offend the Equal Protection Clause under the test laid down in *Morey v. Doud, supra;* and even if it be said that the classification here challenged affects "fundamental interests" or is "inherently suspect," it is our view that the desire of the State to exercise its authority as *parens patriae* and provide for the care and protection of its children supplies a "compellingly rational" justification for the classification.

The conclusion we reach—that G.S. 7A-278 and related statutes do not violate the Equal Protection Clause by classifying and treating children differently from adults—has also been reached in numerous cases upholding juvenile Acts in other states. "These juvenile statutes have been construed,

applied and upheld in many decisions of this Court including *State v. Burnett, supra* (179 N.C. 735, 102 S.E. 711) ; *State v. Coble,* 181 N.C. 554, 107 S.E. 132; *In re Hamilton,* 182 N.C. 44, 108 S.E. 385; *In re Coston,* 187 N.C. 509, 122 S.E. 183; *Winner v. Brice,* 212 N.C. 294, 193 S.E. 400. Furthermore, statutes similar to our own have been held constitutional in over forty states against a variety of attacks. *In re Gault, supra* [387 U.S. 1, 18 L.Ed. 2d 527, 87 S.Ct. 1428]. See *Paulsen, Kent v. United States:* The Constitutional Context of Juvenile Cases, 1966 Supreme Court Review 167, 174." *In Re Burrus, supra* (275 N.C. 517, 169 S.E. 2d 879).

[4] Appellant makes the further contention that North Carolina's statutory scheme, G.S. 7A-278 (5), 7A-285 and 7A-286 (2) and (4), allowing a child to be adjudged *undisciplined* and placed on probation *without benefit of counsel,* while at the same time requiring counsel before a child may be adjudged *delinquent,* denies equal protection of the laws to the undisciplined child.

This argument has no merit and cannot be sustained. The Equal Protection Clause is offended only if the classifications of "undisciplined" and "delinquent" rest on grounds wholly irrelevant to the achievement of the State's objective. "State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland,* 366 U.S. 420, 6 L.Ed. 2d 393, 81 S.Ct. 1101 (1961). In seeking solutions which provide in each case for the protection, treatment, rehabilitation and correction of the child, it is impellingly relevant to the achievement of the State's objective that distinctions be made between undisciplined children on the one hand and delinquent children on the other. The one may need protection while the other needs correction. In our opinion, the statutes under attack embody no violation of the Equal Protection Clause. In a procedural context, as here, the Equal Protection Clause requires no more than the Due Process Clause requires.

[5] Finally, appellant urges that the trial judge's failure to state in his order that he found "beyond a reasonable doubt" that appellant had violated the conditions of her probation was

constitutional error under *In re Winship*, 397 U.S. 358, 25 L.Ed. 2d 368, 90 S.Ct. 1068 (1970).

In *Winship*, the juvenile was accused of stealing $112 from a woman's pocketbook and was brought into juvenile court on a petition alleging him to be delinquent. The juvenile was adjudged delinquent and placed in a training school, subject to confinement for as long as six years. The juvenile judge acknowledged that pursuant to a New York statute his determination of the delinquency issue was based on a preponderance of the evidence. The juvenile, contending that due process required proof beyond a reasonable doubt, carried the case by successive appeals to the Supreme Court of the United States. The Court held that the Due Process Clause requires proof beyond a reasonable doubt in delinquency proceedings wherein the child is charged with an act that would constitute a crime if committed by an adult. Here, Valerie Walker was charged with delinquency by reason of probation violations, none of which violations amounted to a crime. *See* G.S. 7A-278(2). Therefore, *Winship* does not apply to these findings, and is not authority for the argument that the findings here must be made upon proof beyond a reasonable doubt.

[6] Even in cases where *Winship* applies, we think the failure of the trial judge to state that he finds the facts "beyond a reasonable doubt" is not fatal if the evidence is sufficient to support his findings by that quantum of proof. Of course, the better practice dictates that the judge's order recite affirmatively that the findings are made beyond a reasonable doubt. Even so, since there is no statutorily established quantum of proof in juvenile proceedings in North Carolina, in the absence of record evidence that the trial judge followed some other standard, there is a permissible inference that he followed the applicable law and found the facts beyond a reasonable doubt as required by *Winship*. *Compare Chappell v. Winslow*, 258 N.C. 617, 129 S.E. 2d 101 (1963) (rebuttable presumption that when court sits without a jury it ignores incompetent evidence and acts only on competent evidence); *State v. Griggs*, 223 N.C. 279, 25 S.E. 2d 862 (1943) (in absence of findings, presumption that trial judge found such facts as would support his rulings); *State v. Hines*, 266 N.C. 1, 145 S.E. 2d 363 (1965) (jury charge not in record, presumption that charge is correct).

In re Walker

This record reveals that the basic requirements of due process and equal protection with respect to the adjudication of delinquency were fully met. No error of law by the courts below has been made to appear. For the reasons stated, the result reached by the Court of Appeals upholding the order entered by Judge Gentry is

Affirmed.

Chief Justice BOBBITT dissenting.

Valerie Lenise Walker, who was born April 14, 1957, appeals from an order entered October 27, 1971, which, based on a finding that Valerie was a delinquent child, committed her to the North Carolina Board of Juvenile Correction, to be and remain in the custody and under the control and supervision of the officials thereof until discharged in accordance with law. The basis for the finding that Valerie was a "delinquent child" was that she had violated the conditions of probation set forth in an order of August 19, 1971, which adjudged that Valerie was an "undisciplined child."

The order of August 19, 1971, had been entered by Judge Gentry after a hearing on August 17, 1971, on a petition filed by Mrs. Katherine Walker, Valerie's mother, which asserted, in the phraseology of G.S. 7A-278(5), that Valerie was an "undisciplined child." This order recites that Valerie, Mrs. Walker, and Mrs. Jones, Court Counselor, were present for the hearing. The record before us does not show what evidence was then heard. Valerie was not represented by counsel at this hearing on August 17th.

On September 21, 1971, a petition filed by Mrs. Jones, Court Counselor, asserted that Valerie "ha[d] violated Conditions No. 1, 2, and 3 of the probation order dated August 19, 1971." Judge Gentry found that Valerie was an indigent person and appointed the Public Defender to represent her.

In Valerie's behalf, the Public Defender moved that the order dated August 19, 1971, be vacated; that Valerie be given a plenary hearing on the allegations contained in the petition filed August 2, 1971; and that she be provided counsel to represent her at such hearing. Exception was taken to the court's denial of this motion.

Thereafter, the court heard testimony relating to Valerie's conduct *subsequent* to August 19th. An assistant solicitor offered the testimony of Mrs. Walker, Valerie's mother, of Mr. Howard King, Assistant Superintendent of the Junior High School which Valerie attended, and of "the Probation Officer." Valerie alone testified in her own behalf.

For present purposes, I accept as valid the conditions of probation and the sufficiency of the evidence to support Judge Gentry's findings that Valerie's conduct subsequent to August 19th was in violation of the conditions of her probation.

The applicable statutory provisions quoted below appear in G.S. Volume 1B, Replacement 1969.

G.S. 7A-278 (5) provides: " 'Undisciplined child' includes any child who is unlawfully absent from school, or who is regularly disobedient to his parents or guardian or custodian and beyond their disciplinary control, or who is regularly found in places where it is unlawful for a child to be, or who has run away from home."

G.S. 7A-278 (2) provides: " 'Delinquent child' includes any child who has committed any criminal offense under State law or under an ordinance of local government, including violations of the motor vehicle laws or *a child who has violated the conditions of his probation under this article.*" (Our italics.)

G.S. 7A-285 includes the following: "The juvenile hearing shall be a simple judicial process designed to adjudicate the existence or nonexistence of any of the conditions defined by G.S. 7A-278 (2) through (5) which have been alleged to exist, and to make an appropriate disposition to achieve the purposes of this article. In the adjudication part of the hearing, the judge shall find the facts and shall protect the rights of the child and his parents in order to assure due process of law, including the right to written notice of the facts alleged in the petition, the right to counsel, the right to confront and cross-examine witnesses, and the privilege against self-incrimination. In cases where the petition alleges that a child is delinquent *or* undisciplined *and* where the child *may* be committed to a State institution, the child shall have a right to assigned counsel as provided by law in cases of indigency." (Our italics.)

Valerie was found delinquent and committed solely on the ground she had violated certain of the probation conditions

imposed when she was adjudicated an "undisciplined child" on August 19th. The adjudication that she was an "undisciplined child" was absolutely essential to a valid commitment for violation of probation conditions. The Court holds that she was entitled to assigned counsel *only at the final hearing* to determine whether the probation conditions had been violated. In my opinion, she was equally entitled to assigned counsel at the earlier hearing to determine whether she should be adjudged an "undisciplined child."

Here a fourteen-year-old girl was brought before the juvenile court upon the complaint of her mother. Absent counsel, she stood alone before the court. In addition to the statutory requirement, it is my opinion that due process required that counsel be assigned to represent her at any hearing which might result in an adjudication prejudicial to her.

For the reasons indicated, I would reverse the decision of the Court of Appeals, vacate Judge Gentry's order of October 27, 1971, and remand the cause with direction that a plenary hearing be conducted when Valerie is represented by counsel for *de novo* consideration and determination of the charge in the original petition that she is an "undisciplined child."

Justice SHARP joins in this dissenting opinion.