**STATE of Tennessee ex rel. Willie GILLARD et al., Appellants,**

v.

**Howard G. COOK et al., Appellees.**

Supreme Court of Tennessee.

Sept. 29, 1975.

G. Gordon Bonnyman, Jr., Legal Services of Nashville, Inc., Nashville, Adrienne E. Volenik, St. Louis, Mo., for appellants.

R. A. Ashley, Jr., Atty. Gen., David L. Raybin, Asst. Atty. Gen., Nashville, for appellees.

## OPINION

FONES, Chief Justice.

This case presents two (2) issues: (1) Whether a juvenile is entitled to counsel at every probation revocation hearing; (2) Whether the standard of proof in juvenile probation revocation hearings should be "beyond a reasonable doubt" or by a "preponderance of the evidence."

Willie Gillard, the Petitioner below, was found delinquent by a juvenile court on a date uncertain but no later than January, 1973, and was committed to a juvenile institution. He was then released on home placement status [1] (commonly called "aftercare" under prior law [2]) in April, 1973.

1. "Home placement", as defined in T.C.A. § 37–302(13), Public Acts 1975, ch. 326, § 1, in the juvenile court system is a release of the juvenile from institutional custody which is analogous to administrative parole in the adult criminal courts. Contrast home placement with "probation," T.C.A. § 37–203, in the juvenile court system which is

2. Note 2 on p. 547.

On May 9, 1974, this home placement status was terminated without a hearing by an *ex parte* order of the Juvenile Court of Shelby County, and the Petitioner was returned to a juvenile institution. The named Petitioner filed a writ of habeas corpus and class action on September 24, 1974, challenging the revocation procedures. The State conceded that Petitioner's revocation of home placement without a hearing was unconstitutional in view of the recent decisions in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). As the law at that time was silent as to the procedure to be followed in the revocation of juvenile probation, the Chancellor, in his order of February 20, 1975, approved procedures to be followed in revocation proceedings as stipulated between Petitioner and State. Subsequent to that order the Tennessee Legislature amended T.C.A. § 37–237 and set by statute the juvenile probation revocation procedures to be followed in this State. Public Acts 1975, ch. 326, § 3. It should be noted that even though the procedures followed in the juvenile court system were revised by Public Acts 1975, ch. 326, §§ 1–7, the two issues presented in this appeal are not affected by that revision.

The learned Chancellor held that a juvenile has a right to counsel at all home placement revocation hearings, and that the proper standard of proof to determine whether Petitioner violated the conditions of his home placement status is "preponder-ance of the evidence", rather than "beyond a reasonable doubt."

Petitioner and State appeal from the Chancellor's decree.

## I.

In his argument that the right to counsel is required in every home placement revocation hearing, Petitioner's main thesis is that the revocation of home placement is merely a continuation of the original proceeding against the juvenile defendant which led to a finding of delinquency and subsequent imprisonment. This is so, the argument continues, because juveniles are not sentenced to a definite period of imprisonment in months or years; thus, when the juvenile is released on home placement, he no longer owes the state any remaining time on the original sentence. Consequently, any future re-imprisonment would constitute an imposition of a new sentence of imprisonment rather than the re-instatement of a previously assessed, but temporarily suspended, sentence. Therefore, Petitioner strongly argues that the holding of *Mempa v. Rhay,* 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967)[3] is controlling, and that the right to counsel attaches at every home placement revocation hearing.

We disagree.

The hybrid and somewhat peculiar functions of our juvenile court system require that a juvenile not be sentenced to a set number of years imprisonment; rather, the juvenile is sentenced to an indefinite term so that he may be released on home place-

generally considered analogous to judicial probation in the adult criminal courts. A juvenile placed on probation is not required to serve any time in the custody of the Department of Corrections prior to being released to the custody of a parent or guardian.

2. Public Acts 1963, ch. 208, § 2, codified in T.C.A. § 37–1102, and amended by Public Acts 1975, ch. 326, § 6.

3. Petitioner, Jerry Douglas Mempa, was convicted of a criminal offense and placed on probation for two (2) years. The imposition of a sentence was deferred under a Washington state statute. Petitioner's probation was subsequently revoked at a hearing at which he was not represented by counsel, and he was then sentenced to the maximum sentence of ten (10) years, which was required by law, with a recommendation to the parole board that he serve only one (1) year. The Supreme Court held that representation by counsel was essential because the imposition of sentence at the probation revocation hearing rendered that hearing a "critical stage" of the criminal process.

ment as soon as he is rehabilitated. Thus, the minimum sentence is an indefinite one. T.C.A. §§ 37–237, 37–437.

The maximum sentence for a juvenile, however, is a definite term of years; that is, the juvenile court may not sentence a juvenile under its jurisdiction to a term of imprisonment which would extend beyond his twenty-first (21st) birthday. T.C.A. §§ 37–203(c), 37–437. This juvenile sentencing structure is comparable to the Tennessee Indeterminate Sentence Act, T.C.A. § 40–2707, which has been in effect in this state since 1913. Public Acts, 1913, ch. 8, § 1.

■ We reject the idea that a juvenile released on home placement status no longer owes the state any remaining time on the original sentence just as we would reject that proposition if raised on behalf of an adult sentenced under T.C.A. § 40–2707. It is true that the juvenile does not owe the state any more time in *institutional* custody if he complies with the terms of his home placement, but he still owes the state time in his home placement status. A revocation of home placement is not in any sense a new finding of delinquency with a new and indefinite commitment; rather, it is merely a finding of a violation of the conditions of his home placement with a return to imprisonment under the original sentence.

■ This situation is governed by the holding of *Gagnon v. Scarpelli, supra,* where the adult defendant was first found guilty, sentenced, and then placed on probation. His probation was later revoked at a revocation hearing, and he was returned to prison to serve the remainder of his sentence. In that case the Court extended the right of counsel to alleged probation violators appearing before a probation revocation board if the probationer makes a request for counsel:

". . . based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public

record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present."

411 U.S. at 790, 93 S.Ct. at 1764

Additionally the Court noted that in doubtful cases it should also be considered ". . . whether the probationer appears to be capable of speaking effectively for himself." 411 U.S. at 791, 93 S.Ct. at 1764. We find this to be especially applicable to juveniles because of the age, maturity, and level of articulative development of children faced with proceedings in juvenile court.

The critical distinction between *Mempa* and *Gagnon* is that in *Mempa,* the revocation process was interwoven with the deferred sentencing process, while in *Gagnon* only the post-adjudicatory probation revocation was at issue.

■ In the situation presented by the case *sub judice,* the sentencing process has been completed and is not involved in a subsequent administrative hearing to determine whether to revoke home placement. Thus, the presence of counsel is not mandated at every hearing at which home placement could be terminated. The juvenile judge must consider each case on its merits, utilizing the criteria specified in *Gagnon v. Scarpelli, supra,* 411 U.S. at 790, 791, 93 S.Ct. 1756 to determine whether the appointment of counsel is required. As a general rule, counsel should be provided, and, as mandated under *Gagnon,* any doubt should be resolved in favor of appointment of counsel.

II.

■ The Chancellor below correctly held that the standard of proof in a proceeding in juvenile court to revoke home placement is the "preponderance of the evidence" standard. Petitioner attacks this holding, maintaining that the alleged act or acts

which constitute grounds for revocation of home placement should be proved beyond a "reasonable doubt." He bases this contention upon the proposition that a juvenile who has his home placement revoked is faced with the imposition of a new sentence. We reject this contention for the same reasons advanced in the preceding discussion: revocation of home placement does not constitute imposition of a new sentence; it is a recommitment under the previously imposed sentence.

Petitioner also argues that, even though adult parolees and probationers need not have parole violations established beyond a reasonable doubt, *Davenport v. State*, 214 Tenn. 468, 381 S.W.2d 276 (1964), the structure of the juvenile system requires a higher level of due process for juveniles than adults, and proof beyond a reasonable doubt is necessary for the protection of juveniles. As authority for this proposition, Petitioner cites several cases. An analysis of these cases indicates that while revocation of probation was at issue, all of the proceedings were filed as original delinquency petitions, and most relied on *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)[4] for the proposition that "beyond a reasonable doubt" is the applicable standard in adjudicating delinquency. *In Re Z*, 10 Cal.App.3d 565, 89 Cal.Rptr. 246 (1970) (Adjudicatory stage of juvenile court proceedings), *In Re Taylor*, 268 A.2d 522 (D.C.App.1970) (Also adjudicatory stage). *In Re Walker*, 282 N.C. 28, 191 S.E.2d 702 (1972) involved an adjudication of delinquency based on probation violations. The court there felt *Winship* was not applicable ". . . and is not authority for the argument that the findings here must be made upon proof beyond a reasonable doubt." 191 S.E.2d at 711.

The Supreme Court of Arizona in *In Re Maricopa Juvenile Action*, 111 Ariz. 135, 524 P.2d 1310 (1974) considered the issue of the applicable standard of proof in juvenile probation revocation proceedings and determined that the standard should be the same for juveniles as for adults: "Due process does not require that a higher standard be established for the revocation of the probation of a juvenile." 524 P.2d at 1311.

To require the state to prove beyond a reasonable doubt that the juvenile offender committed the act charged, be it a technical violation or a new criminal offense, would unduly burden the state in the supervision of juveniles put in home placement. This would have the effect of requiring the state to begin anew an adversary criminal proceeding each time home placement was sought to be revoked.

The juvenile is certainly entitled to the same standard of proof as an adult, but we do not feel that due process accords him a higher standard.

The decree of the Chancery Court that the juvenile has a right to counsel at all home placement revocation hearings is modified as herein provided, and affirmed as to the standard of proof applicable at said hearings.

COOPER, HENRY, BROCK and HARBISON, JJ., concur.

---

4. The Court in *Winship* held that during the *adjudicatory* stage of a delinquency proceeding, the Constitution mandated that the fact of delinquency be proved beyond a reasonable doubt.