**DISTRICT OF COLUMBIA, Appellant,**

v.

**B. J. R., Appellee.**

**No. 7651.**

District of Columbia Court of Appeals.

Argued May 14, 1974.

Decided Jan. 27, 1975.

15. Order No. 5614, *supra* note 7, at 18. 16. Order No. 5620, *supra* note 8, at 4.

David P. Sutton, Asst. Corp. Counsel, with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellant.

Jeffrey Freund, Washington, D. C., for appellee.

Before REILLY, Chief Judge, and NE-BEKER and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

This is an appeal from an order of the Family Division dismissing a petition, as amended, filed under D.C.Code 1973, § 16–2301(8)(A)(iii) and 16–2301(8)(B), on the ground that the definition of "children in need of supervision" in that statute (hereinafter CINS) is "unconstitutionally vague" and cannot be saved by reasonable construction. The amended petition alleged that the appellee was a child "in need of supervision in that she is habitually disobedient of the reasonable and lawful commands of her parent and is ungovernable." Appellee was specifically charged with absconding from home in April and October of 1969, in June and August of 1972, and on February 26, 1973. The last three abscondances were within the nine months preceding the March 6, 1973, filing of the CINS petition in the trial court.[1]

---

1. Appellee was not apprehended following the last abscondance until March 5, 1973. After the petition was filed she was placed in temporary custody of a Youth Shelter House from which she absconded again on March 13, 1973, and was not apprehended for seven days.

■ The pertinent portion of § 16–2301 reads as follows:

(8) The term "child in need of supervision" means a child who—

(A) . . .

(iii) is habitually disobedient of the reasonable and lawful commands of his parent, guardian, or other custodian and is ungovernable; and

(B) is in need of care or rehabilitation.

The sole issue on appeal is whether or not this language under attack for vagueness passes constitutional muster. We find that it does.

The Supreme Court in Parker v. Levy, 417 U.S. 733, 752, 94 S.Ct. 2547, 2560, 41 L.Ed.2d 439 (1974), recently summarized the due process elements of the "void-for-vagueness" doctrine:

" 'The doctrine incorporates notions of fair notice or warning. Moreover, it requires legislatures to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent "arbitrary and discriminatory enforcement." Where a statute's literal scope, unaided by narrowing state court interpretation, is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts.' Smith v. Goguen, 415 U.S. 566, 572–573, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974)."

It is difficult to perceive how our CINS statute could violate these requirements when considered in regard to the conduct of the appellee. See Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954).

■ Children of ordinary understanding know that to repeatedly abscond from home in defiance of the lawful commands of one's parent is a rather drastic form of disobedience that may well precipitate some disciplinary or punitive action. The statute here gave the appellee adequate warning that to abscond from home five times in four years, three of those times within the nine months preceding the instant petition, would subject her to the sanctions provided for a child who "is habitually disobedient of the reasonable and lawful commands of [her] parent . . . ." Such conduct establishes the "frequent practice or habit acquired over a period of time" required to satisfy the "habitually" element as that term was authoritatively construed under an earlier version of our juvenile statute in In re Elmore, D.C.App., 222 A.2d 255, 258–259 (1966), rev'd on other grounds, 127 U.S.App.D.C. 176, 382 F.2d 125 (1967).

When a child's conduct clearly falls within the common understanding of the statutory language, the officials charged with enforcing the CINS statute are not compelled to make arbitrary decisions in applying it to juveniles such as the appellee. If a parent makes reasonable efforts to control a child but is unable to keep the child from running away, it seems clear that the child is "ungovernable" in his present home situation and may be in need of closer supervision than is available at home. Section 16–2301(8) was explicitly designed to provide such supervision.

While it may be said that the wording of the CINS statute is somewhat broad and general, we must recognize, as did the Supreme Court when it considered the alleged vagueness of the Hatch Act, that

. . . there are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest. [United States Civil Service Comm'n v.

National Ass'n of Letter Carriers, 413 U.S. 548, 578–579, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1973).]

 Our juvenile code, particularly the CINS section, is not a criminal statute in the ordinary sense.[2] Further, language limitations are particularly acute for the draftsmen of juvenile laws designed to implement the broad social policy of reinforcing parents in carrying out their responsibility to support and promote the welfare of their children. To enable parents to carry out this legal obligation, the law gives them the authority to control their children through the giving of reasonable and lawful commands. The CINS statute reinforces this authority and may be invoked when children repeatedly refuse to recognize their obligation to obey such commands. *See* Commonwealth v. Brasher, 359 Mass. 550, 270 N.E.2d 389 (1971).

 The court is also mindful that our present CINS statute, adopted in 1970, is the product of highly competent, contemporaneous legal expertise in the drafting of juvenile court statutes. The definition of "children in need of supervision" is substantially identical to those proposed in the Uniform Juvenile Court Act (U.L.A.) § 2(4) (1973) and the Legislative Guide for Drafting Family and Juvenile Court Acts § 2(p) (Dept. of H.E.W., Children's Bureau Pub. No. 472–1969). The 1970 statute eliminated, *inter alia,* troublesome language from D.C.Code 1967, §§ 11–1551(a)(1) (H) and (I), which gave the juvenile court jurisdiction over children who engaged in "immoral" activities.[3] Neither the lower court nor the appellee has provided us with convincing suggestions for

further improvement in our present act. A statute passes constitutional muster

> . . . if the general class of offenses to which the statute is directed is plainly within its terms[.] [T]he statute will not be struck down as vague even though marginal cases could be put where doubts might arise. [United States v. Harriss, *supra,* 347 U.S. at 618, 74 S.Ct. at 812.]

Our conclusion that the CINS statute is not unconstitutionally vague is supported by the overwhelming weight of authority from other jurisdictions which have considered the validity of juvenile statutes with similar language. Most closely in point is A. v. City of New York, 31 N.Y. 2d 83, 286 N.E.2d 432 (1972), which upheld a statute defining a "person in need of supervision" to be, *inter alia,* one who is "incorrigible, ungovernable or habitually disobedient and beyond the lawful control of parent or lawful authority." 31 N.Y.2d at 87, 286 N.E.2d at 433. In accord, in validating similar statutes, are In re Jackson, 6 Wash.App. 962, 497 P.2d 259 (1972); In re Walker, 14 N.C.App. 356, 188 S.E.2d 731, aff'd, 282 N.C. 28, 191 S.E.2d 702 (1972). Interpretations by sister jurisdictions of statutory language so strikingly parallel to our own cannot be dismissed, as the trial court attempted to do, merely because the language is not "identical" or is a "less-than-perfect fit".

The trial court, in finding the CINS statute unconstitutionally vague, limited itself to an examination of the statute's facial validity without consideration of whether its language gave one such as the appellee fair warning that to repeatedly

---

2. D.C.Code 1973, § 16–2318; In re J. T., D.C.App., 290 A.2d 821, 823 (1972). *See* McKeiver v. Pennsylvania, 403 U.S. 528, 541, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971).

3. Similar language in other statutes had been struck down on "vagueness" grounds in several jurisdictions. *See e. g.,* Gesicki v. Oswald, 336 F.Supp. 371 (S.D.N.Y.1971) (hold-

ing unconstitutional N.Y.Code Crim.Proc. § 913–a(5) and (6) which allowed incarceration of children "morally depraved or in danger of becoming morally depraved"). *But see* A. v. City of New York, 31 N.Y.2d 83, 286 N.E.2d 432 (1972) (upholding the "persons in need of supervision" portion of the same New York juvenile court act which consists of language remarkably similar to our own).

abscond from home would subject her to CINS sanctions. Appellee attempts to continue this line of reasoning on appeal by anticipating potentially abusive applications of the statute in a variety of hypothetical situations, particularly emphasizing possible infringements upon First Amendment rights of children. But the Supreme Court in Parker v. Levy, *supra,* 417 U.S., at 759, 94 S.Ct. at 2563, rejected that approach when it said:

> . . . "[e]mbedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." [Broadrick v. Oklahoma, 413 U.S. 601, 610, 93 S.Ct. 2908, 37 L. Ed.2d 830 (1973).] . . . "[T]he Court has recognized some limited exceptions to these principles, but only because of the most 'weighty countervailing policies.' " *Id.,* at 611, 93 S.Ct. at 2915. One of those exceptions "has been carved out in the area of the First Amendment." *Ibid.* . . .

■ We find no "weighty countervailing policies" in this case to justify allowing an attack on the facial validity of the CINS statute by one whose conduct clearly falls within its parameters.

The limited scope of the exception which allows a statute to be struck down for facial overbreadth, regardless of whether or not the statute has been constitutionally applied to the challenging party, was elaborated on in Broadrick v. Oklahoma, *supra,* at 615, 93 S.Ct. at 2917:

> [T]he plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanc-

tion moves from "pure speech" towards conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. . . . To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.

Consistent with this view is our notation in Harris v. United States, D.C.App., 315 A. 2d 569, 575 n. 16 (1974) (en banc), that to justify the facial invalidation of a statute under the overbreadth doctrine "the area affected by the challenged law must substantially involve First Amendment interests."

In considering the facial validity of the CINS statute, we fail to find initially that appellee raised in her pleadings in the trial court the First Amendment arguments advanced here on appeal. While not raised in the motion to dismiss, the trial court did note in its memorandum opinion that the issue was raised in the supporting memorandum and that at the hearing appellee argued that the statute "is violative of due process on the ground that it impinges upon constitutionally protected behavior".

■ Neither the plainly legitimate sweep of the language of the CINS statute nor the facts of this case suggest a substantial infringement upon the constitutionally protected conduct of children so as to merit facial invalidation. The statute reinforces parents as they attempt to discipline their children in the broad ambit of family life. We conclude that the sort of activity that would establish a child as "habitually disobedient of the reasonable and lawful commands of his parent" would seldom directly and principally involve First Amendment activity such as expressive conduct or pure speech.

We find that the statute gave fair warning to the appellee that the sort of conduct involved here would come within its parameters. While the rule that party may not challenge a statute on the ground that it may be unconstitutionally applied to others has been modified somewhat where there are strong First Amendment considerations such as efforts to control "spoken words", Lewis v. City of New Orleans, 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974); Dombrowski v. Pfister, 380 U.S. 479, 486, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), we do not find such considerations in this case.

To the extent that First Amendment activities may be infringed when the CINS statute is applied, we suggest that in balancing such infringement against the right and duty of a parent to teach, control, and discipline a child, we are obliged, if we are to accord some recognition to reality, to grant the parent greater latitude in the First Amendment area than is permitted the state.[4] However, such parental authority would be seriously undermined if not given some official support. It strikes us that in applying the First Amendment the strict enforcement of those rights must be tempered when we consider disciplinary problems involving a parent-child relationship.

The Supreme Court in United States Civil Service Comm'n v. National Ass'n of Letter Carriers, *supra,* described the ultimate objective of a court in construing a statute as follows:

> As we see it, our task is not to destroy the Act if we can, but to construe it, if consistent with the will of Congress, so as to comport with constitutional limitations. [413 U.S. at 571, 93 S.Ct. at 2893.]

Here we do not find it necessary to impose a limiting construction on the statute to save it from this constitutional attack. The general class of conduct prohibited by the CINS statute is clear and we will not invalidate the statute on the basis of a hypothetical argument that it might conceivably be applied unconstitutionally. For the reasons we have delineated, we hold that it was error for the trial court to dismiss the petition and accordingly it is ordered reinstated.

Reversed and remanded for further proceedings not inconsistent with this opinion.

4. Pierce v. Society of the Sisters of the Holy Names of Jesus and Mary, 268 U.S. 510, 534–535, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925), in which the Supreme Court held that a compulsory education act "unreasonably interferes with the liberty of parents and guardians to direct the upbringing and education of children under their control." *Pierce* is discussed with approval in Wisconsin v. Yoder, 406 U.S. 205, 232–233, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972).